## COMMISSIONER OF HEALTH SERVICES v. YOUTH CHALLENGE OF GREATER HARTFORD, INC., ET AL. (14221)

SHEA, GLASS, COVELLO, BORDEN and F. X. HENNESSY, Js.

Argued March 22—decision released July 23, 1991

*James W. Sherman,* for the appellant (named defendant).

*Maite Barainca,* assistant attorney general, with whom, on the brief, were *Clarine Nardi Riddle,* then attorney general, and *Richard J. Lynch,* assistant attorney general, for the appellee (plaintiff).

BORDEN, J. The issues raised in this appeal from a judgment of contempt and a modification of an injunction are whether: (1) the trial court's finding that the named defendant, Youth Challenge of Greater Hartford, Inc.,[1] was operating a drug and alcohol treatment facility without a license was clearly erroneous; and

---

[1] The named defendant, Youth Challenge of Greater Hartford, Inc., does business as Youth Challenge Ranch and as Youth Challenge Girls' Home. The other defendants are Louie Collazo, the director of Youth Challenge

(2) the trial court's remedial enforcement order improperly expanded the trial court's earlier injunction.[2] We affirm.

In August, 1986, the plaintiff, the commissioner of health services, filed a petition for enforcement, seeking to enjoin the defendants from operating two unlicensed substance abuse treatment facilities. The trial court, *M. Hennessey, J.*, granted the plaintiff's request for a permanent injunction, and this court affirmed the judgment on appeal. *Commissioner* v. *Youth Challenge of Greater Hartford, Inc.*, 206 Conn. 316, 318–19, 537 A.2d 480 (1988) (*Youth Challenge I*).

Thereafter, in November, 1988, the plaintiff moved that the defendants be held in contempt, alleging that they were violating the permanent injunction by continuing to operate two unlicensed substance abuse

Ranch, and Christian F. Poulsen, Jr., the director of Youth Challenge Girls' Home. We refer herein to the named defendant as "the defendant," and to all three defendants as "the defendants."

[2] In its reply brief, the defendant raises a panoply of claims, among them: (1) numerous procedural due process violations; (2) a substantive due process violation; (3) deprivation of the defendants' constitutional rights of freedom of association and of privacy under the first and fourteenth amendments to the United States constitution and article first, § 14, of the Connecticut constitution; and (4) unconstitutional overbreadth in violation of the first amendment to the United States constitution and article first, § 14, of the Connecticut constitution.

We decline to consider these claims because they either were never raised or were so inadequately briefed in the defendant's original brief that we consider them abandoned. "Claims of error by an appellant must be raised in his original brief; Practice Book § 3060F; so that the issue as framed by him can be fully responded to by the appellee in its brief, and so that we can have the full benefit of that written argument. Although the function of the appellant's reply brief is to respond to the arguments and authority presented in the appellee's brief, that function does not include raising an entirely new claim of error." *Finley* v. *Aetna Life & Casualty Co.*, 5 Conn. App. 394, 403 n.6, 499 A.2d 64 (1985), rev'd on other grounds, 202 Conn. 190, 520 A.2d 208 (1987).

treatment facilities.[3] The trial court, *Satter, J.,* held the named defendant in contempt[4] and modified the 1986 injunction. The defendant appealed to the Appellate Court, and we transferred that appeal to this court pursuant to Practice Book § 4023.

The facts leading to this appeal are as follows. The defendant operates a licensed substance abuse treatment facility at 15–17 May Street, Hartford. In August, 1986, the plaintiff filed a petition for enforcement seeking to enjoin the defendants from operating two unlicensed substance abuse treatment facilities, the Youth Challenge Ranch (Ranch) in Moosup, and the Youth Challenge Girls' Home (Girls' Home) in Hartford. In December, 1986, Judge Hennessey found that the defendants managed and operated the Ranch and the Girls' Home, and that the Ranch and the Girls' Home were drug and alcohol treatment facilities operating without a license. See *Youth Challenge I,* supra, 319.

In particular, Judge Hennessey found that the tax returns of the defendants listed the Girls' Home as a "drug rehabilitation program," and the Ranch as a "resident drug program." The Girls' Home was described in its brochure as having the purpose of "instilling in the drug dependent person, the incentive to

---

[3] The plaintiff's request for a contempt order also was based on the ground that the defendants refused to allow the plaintiff's inspectors to view the unlicensed facilities operated by the defendants in violation of paragraph five of the 1986 injunction. On December 20, 1988, the trial court, *Satter, J.,* bifurcated the contempt hearing on the alleged violations. Judge Satter held the defendants in contempt after finding that they had refused the inspectors access to the facilities, and fined the defendants $1000. The defendants appealed to the Appellate Court, which affirmed the judgment in *Commissioner* v. *Youth Challenge of Greater Hartford, Inc.,* 20 Conn. App. 806, 567 A.2d 849 (1989) (*Youth Challenge II*).

[4] The plaintiff withdrew the motion for contempt against the individual defendants.

forsake his drug habit for the pursuit of a new life."
The court further found that the Girls' Home was
engaged in detoxification of its residents, and also pro-
vided a supervised and supportive living situation for
abusing or drug dependent persons, treatment and
rehabilitative programs, assessment of the residents'
physical and psychological condition, referral for med-
ical care, psychiatric evaluation and continuing treat-
ment, and storage of medication. Similarly, Judge
Hennessey found that the services provided by the
Ranch, the second phase of a residential rehabilitation
program for males that follows the induction phase at
the defendants' licensed facility, included planned treat-
ment and rehabilitation programs, training and voca-
tional rehabilitation, referral for continuing treatment
and/or medical care, dietary services, central storage
of medication and administration of medication, assess-
ment of the individual's physical and psychological con-
dition to determine appropriateness for admission, and
ongoing assessments to establish a program for main-
taining alcohol and/or drug free status.

Based on these findings, Judge Hennessey concluded
that both facilities were drug or alcohol treatment facil-
ities that were required to be licensed under the pro-
visions of General Statutes (Rev. to 1985) § 19a-491 (a).[5]

[5] General Statutes (Rev. to 1985) § 19a-491 provides in relevant part:
"(Formerly Sec. 19-577). LICENSE AND CERTIFICATE REQUIRED. APPLICA-
TION. (a) No person acting individually or jointly with any other person shall
establish, conduct, operate or maintain an institution in this state without
a license as required by sections 19a-490 to 19a-503, inclusive. Application
for such license shall be made to the department of health services upon
forms provided by it and shall contain such information as said department
requires, which may include affirmative evidence of ability to comply with
reasonable standards and regulations prescribed under the provisions of
said sections."

An "institution" pursuant to General Statutes (Rev. to 1985) § 19a-490 (a)
includes an "alcohol or drug treatment facility." General Statutes (Rev.
to 1985) § 19a-490 (h) defines an "alcohol or drug treatment facility" as

The court rendered judgment granting a permanent injunction. The terms of the injunction provided, inter alia, that "[t]he defendants are enjoined from operating any unlicensed facilities providing treatment to drug and/or alcohol dependent persons unless, and until, they obtain a license from the Department of Health Services. . . . "[6]

In November, 1988, the plaintiff instituted these proceedings, seeking to have the defendants held in contempt for violation of the injunction, alleging that the defendants were continuing to operate the two unlicensed substance abuse treatment facilities. After four days of hearings, the trial court, *Satter, J.,* found that since the injunction was entered in 1986, the operations at both the Ranch and the Girls' Home had remained unchanged. The court also found that virtually all of the residents of the Girls' Home had histories of drug or alcohol abuse problems, a fact it considered relevant under the definition of "substance-dependent persons" as "individuals who are physically or psycho-

"any facility for the care or treatment of persons suffering from alcoholism or other drug addiction." The term "facilities" means the physical site where the program functions take place. Regs., Conn. State Agencies § 17-227-61 (R) (1986).

[6] In its entirety, the injunction provided: (1) "The defendants are enjoined from operating any unlicensed facilities providing treatment to drug and/or alcohol dependent persons unless, and until, they obtain a license from the Department of Health Services"; (2) "The defendants are to immediately terminate detoxification of persons from either drugs or alcohol at any facility not licensed to provide detoxification"; (3) "The defendants are to immediately terminate dispensing and/or administering medications to residents at any unlicensed facility"; (4) "The defendants are to cease holding themselves out to the public as providing treatment for drug and/or alcohol abusive persons at any unlicensed facility"; and (5) "The State Department of Health Services is to have access to the Youth Challenge Ranch and the Youth Challenge Girls' Home for a period of one year to verify compliance with the injunction. Access is to consist of unannounced visits by Department staff not to exceed one a month. Department staff are to be allowed to tour the facility and review any resident records." The issue in this appeal focuses solely on paragraph one of the injunction.

logically reliant upon alcohol or a drug (1) as a result of substance abuse . . . . " Regs., Conn. State Agencies § 19a-495-570 (a) (37). The court also found from an examination of the medical records of numerous residents of the Ranch and the Girls' Home that the residents were dependent psychologically on drugs, despite the fact that the residents may not have been actively using drugs or experiencing withdrawal symptoms at the time of admission.[7] This finding comports with the definition of a substance dependent person pursuant to the department of health service regulation § 19a-495-570 (a) (37).

Based upon these findings, the court further found that the defendant had continued to operate the Girls' Home and the Ranch as unlicensed drug or alcohol treatment facilities in violation of paragraph one of the 1986 injunction, and, therefore, held the defendant in contempt. Pursuant to its finding of contempt, the trial court modified the injunction as follows: "(1) The defendant shall be fined $200.00 per day to begin 30 days after the Court's issuance of this contempt order unless and until the defendant has either (a) discharged all residents from the Girls' Home and Ranch by transferring them to a licensed substance abuse treatment facility or otherwise discharging them after giving them information about licensed substance abuse treatment facilities in their community, or (b) applied for a license

---

[7] The court noted that the "St. Francis Hospital medical record of one Girls' Home resident, dated February 5, 1987, reads: '24 year old [girl] has been to several alcohol rehabilitation programs in past, returns to Youth Challenge in Hartford . . . . Last P/E [physical exam] 3/86 and since has been in and out of rehab programs intermittently abusing alcohol and using M.J. [marihuana] and cocaine.' " (Brackets in original.) The trial court also found that "[t]he Hartford Department of Social Services' report dated January 13, 1989, on another Girls' Home resident reads, 'Client in Youth Challenge for drug problems. Client arrived from N.J. 11/18/88 to enter Youth Challenge.' " The trial court also found that "[l]ikewise, almost all the residents of the Ranch have substance abuse problems."

from the Department of Health Services for the Ranch and the Girls' Home. If the applicant applies for a license in a timely fashion but has not received a license for a facility within 4 months of the application, the defendant must comply with the discharge provisions of this order within 30 days of the passage of the 4-month period. The defendant may request a written extension of time from the Department if it is in the process of applying for a license and it appears that a decision on the application will not be made within the 4 months. If the Department grants the extension of time, the applicant must meet the new deadline or implement the discharge provisions of this order within 30 days.

"(2) If the defendant chooses or becomes subject to the discharge of residents provision in (1) above, then the defendant must comply with the following additional provisions to ensure that the facilities do not revert back to substance abuse facilities: (a) The defendant shall not allow anyone to reside at the Ranch or Girls' Home who has had a history of substance abuse within one year prior to admission. This means that anyone applying to reside at the Ranch or Girls' Home who was abusing drugs or alcohol or who was in a substance abuse treatment facility within the preceding twelve-month period cannot be admitted. The defendant must verify this by questioning the individuals, the referring person, if known[,] and by checking the person's medical records. The defendant shall maintain documentation of this verification for each person it admits to the Ranch or Girls' Home. This documentation shall be made available to Department inspectors upon request.

"(b) The defendant shall report to the Department on a bi-monthly basis for the first two years following

this order and annually thereafter and provide the Department with the following:

"(A) the names and dates of birth of any new residents; their date of admission and length of stay;

"(B) whether the resident is receiving any money and/or reimbursement for costs or is being provided with any services from any state, city or federal agency and the reason such services/money/reimbursement is being provided.

"(3) The Department shall have access to the Ranch and the Girls' Home for a period of two years from this order to verify compliance with the injunction and with this order. Access is to consist of unannounced visits by Department staff. Department staff are to be allowed to tour the facility, review any resident records, and talk to staff and residents."

## I

The defendant first claims that "[t]here being no 'drug and/or alcohol dependent persons' in the Girls' Home and the Ranch, the court erred in finding the defendant in contempt of the December 4, 1986 Injunction . . . . " The essence of the defendant's first claim is a challenge to the factual findings of the trial court. We reject this challenge.

We first note that this appeal is from a finding of civil contempt, and, therefore, "our review is technically limited to 'questions of jurisdiction such as whether the court had authority to impose the punishment inflicted and whether the act or acts for which the penalty was imposed could constitute a contempt.' . . . This limitation originates because by its very nature the court's contempt power . . . must be balanced against the contemnor's fundamental rights and, for this reason, there exists the present mechanism for the eventual

review of errors which allegedly infringe on these rights. . . . We have found a civil contempt to be improper or erroneous because: the injunction on which it was based was vague and indefinite . . . the findings on which it was based were ambiguous and irreconcilable . . . the contemnor's constitutional rights were not properly safeguarded . . . the penalties imposed were criminal rather than civil in nature . . . and the contemnor, through no fault of his own, was unable to obey the court's order." (Citations omitted.) *Papa* v. *New Haven Federation of Teachers,* 186 Conn. 725, 731–32, 444 A.2d 196 (1982). "Although *Papa* recognizes that plenary review of civil contempt orders extends to some issues that are not truly jurisdictional, its emphasis on fundamental rights underscores the proposition that the grounds for any appeal from a contempt order are more restricted than would be the case in an ordinary plenary appeal from a civil judgment." *Dunham* v. *Dunham,* 217 Conn. 24, 29–30, 584 A.2d 445 (1991).

Although various claims are strewn throughout its brief, the defendant fails adequately to raise a challenge to the contempt order based upon the vagueness or indefiniteness of the injunction, upon an assertion that its constitutional rights were not adequately safeguarded or upon an assertion that it was unable to obey the court's order. Furthermore, the defendant does not claim that the findings upon which the contempt order was based are "ambiguous and irreconcilable . . . ." *Papa* v. *New Haven Federation of Teachers,* supra, 732. Rather, the gravamen of the defendant's claim is that the trial court should have found facts favorable to it contrary to those the court did find.

"The resolution of conflicting factual claims falls within the province of the trial court. . . . 'The trial court's findings are binding upon this court unless they

are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . ' We cannot retry the facts or pass on the credibility of the witnesses.'' (Citations omitted.) *Nor'easter Group, Inc.* v. *Colossale Concrete, Inc.*, 207 Conn. 468, 473, 542 A.2d 692 (1988).

The defendant's claim is premised upon its assertion that none of the inhabitants of the Girls' Home or the Ranch is dependent on drugs or alcohol. A review of the evidence presented to the trial court, however, demonstrates that sufficient evidence was presented to support its conclusion that the Girls' Home and the Ranch both were still operating substance abuse treatment facilities in violation of the injunction.

In support of the trial court's finding that the defendant was continuing to treat drug or alcohol dependent persons, the acting medical director of the Girls' Home and the Ranch, Anthony Ardolini, testified, in regard to the Girls' Home, that "the residents of the Home are psychologically dependent on drugs, even though at the time of admission they may not have been using drugs or having withdrawal symptoms.'' He also stated that the Girls' Home residents " 'are allotted an alternative, comprehensive lifestyle that allows them to remain drug free. That fits my definition of a drug rehabilitation program.' ''

In regard to the Ranch, Ardolini testified that "these [residents] are very addictive individuals. There is something about their psychological make-up, I believe, that makes them that way. This [Ranch] happens to be a very religious organization . . . but they get very much involved—no[t] in a negative way, but addicted—to religious activities of the group, and that offers them a very plausible, certainly a safer, environment where they could go ahead and become more productive members of society.''

In support of the plaintiff's claim that the defendant had continued to operate an unlicensed drug or alcohol treatment facility in violation of the injunction, Louie Collazo, one of the directors of the defendant, testified that "everything is the same, classes, the major operations or the way of homes working on a daily basis have been the same." Collazo testified that "the only change that may be a change [since the 1986 injunction] was when I went there we changed the name."

The defendant does not dispute this evidence, but disagrees with the findings and conclusions reached by the trial court. It is not the function of this court, however, to pass upon credibility; *Nor'easter Group, Inc.* v. *Colossale Concrete, Inc.,* supra; and, upon reviewing the entire record, we can find no reason to disturb the trial court's finding that the defendant has continued to operate two substance abuse treatment facilities in violation of the 1986 injunction. "The trial court's factual findings and ultimate conclusion are adequately supported by the record and are not clearly erroneous. Practice Book § 4061; see also *Pandolphe's Auto Parts, Inc.* v. *Manchester,* [181 Conn. 217, 221–22, 435 A.2d 24 (1980)]; *Howie's Painting Service, Inc.* v. *Ferreria,* 12 Conn. App. 583, 584, 532 A.2d 1318 (1987)." Id., 473.

## II

The defendant next claims that the trial court improperly modified the 1986 injunction at the contempt hearing. The defendant does not challenge the specific modifications entered by the court, but claims that the court should not have modified the 1986 injunction because there were "no pleadings, no notice, no trial and no opportunity for representation by counsel . . . . " Although we generally will not review a claim based

upon a bare assertion of a due process violation; *Hayes* v. *Smith,* 194 Conn. 52, 66 n.12, 480 A.2d 425 (1984); we address the claim but conclude that it is without merit.

At the outset, the defendant's claim that it received no notice, no pleadings, no trial, and no opportunity for presentation of evidence by counsel is easily refuted by an examination of the plaintiff's motion for contempt. In its prayer for relief, the plaintiff requested, inter alia: (a) that the defendant be compelled to allow unannounced visits of the facilities and to allow inspectors to review resident records; (b) that the defendant be forced to show that it has ceased holding itself out to the public as a substance abuse treatment facility; (c) that the defendant be compelled to show that the facilities are no longer operating as substance abuse treatment facilities; and (d) any other equitable relief available. The plain language of this prayer for relief should have alerted the defendant that the plaintiff was requesting relief greater than that provided for in the 1986 injunction. Thus, the defendant should have been aware of the fact that certain modifications were being sought, even before trial began. The defendant had ample notice of the request and ample opportunity both prior to and during trial to present the court with pleadings and evidence demonstrating that such a modification was not necessary.

Furthermore, after four days of trial, the plaintiff filed a posttrial brief to the court. In the brief, the plaintiff submitted a proposed modification of the 1986 injunction. Although the defendant submitted a reply brief, it neither addressed the modification nor requested a hearing thereon. The trial court thereafter adopted the modification of the 1986 injunction proposed by the plaintiff.

The defendant does not dispute that it had the opportunity to address the proposed modification in its reply brief, but failed to do so. The defendant also does not dispute that it never requested a hearing on the proposed modification prior to the determination by the trial court. Nevertheless, the defendant argues, without authority, that its due process rights were violated by the court's adoption of the modification. We conclude, however, that the defendant's failure to respond to the modification requested by the plaintiff and its failure to request a hearing thereon were due to its own laxity and, therefore, do not result in a violation of its due process rights.

Furthermore, it is undisputed that "in dealing with judgments that decree injunctive relief . . . 'courts have inherent power to change or modify their own injunctions where circumstances or pertinent law have so changed as to make it equitable to do so.' *Adams* v. *Vaill,* 158 Conn. 478, 482, 262 A.2d 169 (1969); *Collens* v. *New Canaan Water Co.,* 155 Conn. 477, 494, 234 A.2d 825 (1967)." *Department of Health Services* v. *Commission On Human Rights & Opportunities,* 198 Conn. 479, 487, 503 A.2d 1151 (1986). "Courts have in general the 'power to fashion a remedy appropriate to the vindication of a prior . . . judgment.' " *Hall* v. *Dichello Distributors, Inc.,* 14 Conn. App. 184, 192, 540 A.2d 704 (1988), quoting *Connecticut Pharmaceutical Assn., Inc.* v. *Milano,* 191 Conn. 555, 563, 468 A.2d 1230 (1983). "Having found noncompliance, the court, in the exercise of its equitable powers, necessarily had the authority to fashion whatever orders were required to protect the integrity of [its original] judgment." *Connecticut Pharmaceutical Assn., Inc.* v. *Milano,* supra, 563–64; see also *Gentile* v. *Ives,* 163 Conn. 281, 282, 303 A.2d 720 (1972) (Superior Court has power to enforce its own judgments).

The dissent, based on the plain error doctrine, would remand the case to the trial court on order to modify the injunction to cure what the dissent perceives as its overbreadth. This approach, however, reaches to find plain error where none plainly exists. Plain error is properly reserved for those extraordinary situations where the error is so obvious that the fairness and integrity of and public confidence in the judicial process would be impaired were we to fail to address an issue that was not raised or preserved at trial. *State v. Ortiz,* 217 Conn. 648, 659–60, 588 A.2d 127 (1991). This is not such a case.

First, as the dissent acknowledges, the defendant has never—in the trial court or in this court—raised the claim of modification relied on by the dissent. The defendant's claim was confined to a wholesale attack on the authority of the trial court to make any modification.

Second, contrary to the dissent's assertion, there is no implied finding by the trial court that there are any residents of the Girls' Home or Ranch who have not had drug or alcohol abuse problems. Of course, it was the obligation of the defendant, as the appellant, to cure any ambiguity in the court's decision; *O'Hara v. State,* 218 Conn. 628, 635, 590 A.2d 948 (1991); a remedy the defendant declined to seek.

It is true that the trial court found that "[a]lmost all the residents of the Girls' Home have histories of drug and/or alcohol abuse problems," and that "almost all the residents of the Ranch have substance abuse problems." We read these references, however, as indicating only that the trial court may not have read the medical histories of all the residents. Instead, the court specifically relied on the testimony of Ardolini "that *the residents* of the Home are psychologically dependent on drugs, even though at the time of admission

they may not have been using drugs or having withdrawal symptoms." (Emphasis added.) The court also specifically found that "[t]he Ranch is the second phase of a program which begins at the Youth Challenge Men's Home in Hartford which is a licensed substance abuse facility. The staff of the Men's Home and Ranch mutually decide when a resident is ready to move to the Ranch to continue his rehabilitation." The court further found that "[t]he heavy emphasis on religious study at the Ranch is designed to help residents control drug problems." Thus, it is clear from this record, and from the record of the earlier case, that the defendant is not operating general bible study schools that happen to have some students with substance abuse backgrounds. Rather, the defendant employs bible study as a form of unlicensed substance abuse treatment.

In view of these findings, and in view of the total lack in the defendant's brief of any factual or legal elaboration of a denial of its right to practice religion, it is difficult to comprehend the dissent's insistence that the modified injunction constitutes "a clear violation" of the defendant's right to do so. Furthermore, there is no basis here that we can see for the defendant vicariously to assert its residents' religious rights, as the dissent would permit.

In this instance, the trial court, after having found that the defendant had violated the 1986 injunction prohibiting it from operating two unlicensed substance abuse treatment facilities, had the equitable power to modify the injunction in order to "vindicate" its prior judgment.[8] Because the defendant does not challenge any of the specific provisions of the modified injunc-

---

[8] Indeed, that equitable power appears appropriate in light of the specific factual finding, based on the testimony of one of the defendant's directors, that there were no changes in the operation of the Ranch and the Girls' Home from the time that the initial injunction was issued.

tion, but rather the power of the court to so modify, we end our inquiry here.

The judgment is affirmed.

In this opinion GLASS, COVELLO and F. X. HEN-NESSY, Js., concurred.

SHEA, J., dissenting in part. I agree with the majority opinion in all respects except its attempted justification of the overbreadth of the modified injunction in requiring that *all* residents of the facilities operated by the defendant be discharged despite indications in the finding that not all of them have a history of drug or alcohol abuse. There is a significant discrepancy between the finding of the trial court that "*almost all* the residents" of the Girls' Home and of the Ranch have substance abuse problems and the terms of the modified injunction, which require the defendant to discharge "*all* residents from the Girls' Home and Ranch" unless it applies to the department of health to obtain licenses for these facilities as drug and alcohol abuse treatment centers. (Emphasis added.) If there are any residents of the Girls' Home or the Ranch who have not had drug or alcohol abuse problems, as the finding implies, the modified injunction should not have required that these persons be compelled to leave the defendant's facilities. No license is required for the defendant to operate its religion study program for the benefit of those residents who are not "suffering from . . . alcoholism or other drug addiction." General Statutes (Rev. to 1985) § 19a-490. "Where the subordinate facts found by the trial court do not . . . support the injunction issued, the injunction must be vacated"; *Karls* v. *Alexandra Realty Corporation,* 179 Conn. 390, 403, 426 A.2d 784 (1980); or modified to conform to the facts found.

The defendant has made only a general claim that the modified injunction is overbroad and has not spe-

674

cifically pointed to the finding as a limitation on its proper scope. This court, nevertheless, should regard this obvious flaw as plain error; Practice Book § 4185; see *Finley* v. *Aetna Life & Casualty Co.*, 202 Conn. 190, 196, 520 A.2d 208 (1987); and direct a further modification of the injunction to exclude any residents who have no history of substance abuse. See *DeCecco* v. *Beach*, 174 Conn. 29, 35–36, 381 A.2d 543 (1977). With respect to such persons, the operation of the injunction in its present form would constitute a clear violation of their constitutional right as well as that of the defendant to engage in the practice of religion.

Accordingly, I dissent from the affirmation of the judgment without further modification of the terms of the injunction.