[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION TO MODIFY SUPPORT AND DEFENDANT'S MOTION FOR CONTEMPT
The plaintiff moves to modify a child support order entered as part of a decree of dissolution on March 21, 1991 (Axelrod, J.) obligating him to pay the sum of $200 per week for his son, Jacob, born June 10, 1978. He alleges in his motion that his financial circumstances have changed substantially and he seeks modification of the order consistent with the family support guidelines. The defendant simultaneously moves for contempt for failure of the plaintiff to pay his share of the health expenses for Jacob in violation of an order entered November 18, 1991; for failure to pay child support when due, and for the plaintiff's failure to mail the support checks; claiming that the plaintiff instead comes onto her property and puts the checks directly into her mailbox. The defendant seeks an order that the plaintiff be adjudged in contempt, findings as to arrearages, an immediate garnishment of the plaintiff's earnings and attorney's fees.
 The court received testimony and documentary evidence and the parties briefed the issues involved. The court will consider each motion in turn. CT Page 3707
 I.
A. Plaintiff's Motion to Modify Child Support
A court has the power to modify a child support order in the event of a substantial change in the circumstances of a party or on the basis of a substantial deviation from the child support guidelines.
Both the `substantial change of circumstances' and the `substantial deviation from child support guidelines' provisions establish the authority of the trial court to modify existing child support orders to respond to changed economic conditions. The first allows the court to modify a support order when the financial circumstances of the individual parties have changed, regardless of their prior contemplation of such changes. The second allows the court to modify child support orders that were once deemed appropriate but no longer seem equitable in the light of changed social or economic circumstances as a whole, as reflected in the mandatory periodic revisions of the child support guidelines. See General Statutes 46b-215a. Mullin v. Mullin, 28 Conn. App. 632, 635 (1992) citing Turner v. Turner, 219 Conn. 703, 718 (1991).
Although the plaintiff's motion to modify sought to modify the child support order on the ground of a substantial change in circumstances and did not clearly assert the ground of substantial deviation from the child support guidelines, the defendant did not object to the consideration of the second ground. Both counsel thus had the opportunity to present evidence on and argue the merits of both grounds. Accordingly, the court considers whether the plaintiff has shown that the child support order should be modified downward on either ground. See Turner, supra, 705, n. 3; Mullin, supra, 636.
B. Substantial Change in Financial Circumstances
The following facts are relevant to the determination of the parties' claims. Their marriage was dissolved in an uncontested hearing on March 21, 1991. The parties were married August 24, 1975, and had one minor child, issue of the marriage, Jacob, born June 10, 1978, CT Page 3708 whose child support is at issue here. At the time of the dissolution, the plaintiff was the vice president and general manager of Furniture Fair, Inc., a retail furniture incorporated business, and the majority[1] of its issued and outstanding common stock was owned by plaintiff's father. The plaintiff's financial affidavit shows he then earned $568.14 in net weekly income plus $9.44 in dividends for a total of $577.58. He had net weekly expenses of $626 (including a $300 per weekly pendente lite alimony order); $1,600 in liabilities; and $26.55 per week toward said liabilities, thereby showing a net short fall of $73.97 per week. The affidavit also shows assets totalling $82,130 which included his one-half interest in the family home (valued at $60,500) which was conveyed to the defendant wife as part of the decree. In exchange, she agreed to pay to him the sum of $17,500, without interest, when Jacob completes his post-high school undergraduate education, or, on his eighteenth birthday, whichever is later. His affidavit also included stocks in several publicly-held companies, with no valuations.
The defendant was and still is an executive secretary at Dinex International and her financial affidavit showed a net income from that job of $300.89 per week plus $10.92 from other part-time work for a total net of $311.81 per week. The affidavit also showed weekly expenses of $767.70, which left her a short fall of $167.70 per week, after factoring in her alimony of $300 per week without allowance for federal income taxes. She then showed no liabilities and assets which totaled $26,395.
Since the dissolution, the plaintiff has remarried, and his present wife contributes to his expenses. His father has given him all of the common stock owned by the father in the furniture company, so that plaintiff now owns 188 shares, or 94 percent, of the issued and outstanding stock. The plaintiff's current affidavit shows $385 in net weekly income and $643.03 in weekly expenses plus $53.35 in weekly payments toward total liabilities of $11,039, for a net weekly short fall of $311.35. The plaintiff's affidavit shows $18,300 in assets, and again does not value his stock interests in the publicly-held companies[2] still owned by him or in the furniture business of which he is now president and general manager. Neither party lists the $17,500 obligation of the defendant to the plaintiff on their respective financial CT Page 3709 affidavits or the cash values of their life insurance policies. The court does not condone these and other omissions discussed in this memorandum and will not countenance such omissions in the future. See Mitchell v. Mitchell, 194 Conn. 312, 322 (1984), where the court said: ". . . [t]he spirit of our rules . . . requires full disclosure of all material facts . . . and the policy announced by this court (is) that lawyers who represent clients in matrimonial dissolutions have a special responsibility for full and fair disclosure for a searching dialogue, about all of the facts that materially affect the client's rights and interests."
The defendant shows a net weekly income of $290, and net weekly expenses of $825 plus payment of $122 per week toward liabilities which total $7,338. When adding to her net weekly income the child support of $200 per week and nonmodifiable alimony of $100 per week (again without deduction for federal income tax) and her voluntary retirement plan deduction of $24 per week, she has a net weekly short fall of $211 per week. The defendant's affidavit also shows 22 shares of Niagara Mohawk stock with "value unknown," and $15,500 of assets. If the court includes the $17,500 obligation as an asset on plaintiff's financial affidavit and as a liability on the defendant's financial affidavit, without discount to present value, the plaintiff's affidavit would show assets of $18,300 (as listed), common stocks of $5,000, $17,500 as a receivable from wife less liabilities of $11,039 for a net worth of approximately $29,700 plus the furniture company and his life insurance cash values. The wife's affidavit would show $15,500 (as listed) less liabilities of $7,338 and the $17,500 payable to husband, or a negative net worth of $7,338 plus her unvalued stock and life insurance cash value.
The plaintiff asserts that the downturn experienced by his business and decline in cash flow has required that he reduce the salary he can take from his business. He also claims that he cannot seek to modify the alimony order,[3] as the decree precludes it. He also claims that after the payment of the $300 weekly child support and alimony order, and with the advent of the state income tax, he has only $85 per week for his own needs. He also further asserts in support of his claim that a substantial change in the financial circumstances of the parties has occurred, that the defendant is overwithholding on her state income tax CT Page 3710 deduction of about $23 per week and has received an increase in gross weekly pay of approximately $90 per week. He further asserts that although defendant's home mortgages have variable interest rates, the defendant's claimed mortgage repayments have not decreased between March 1991 and the present, and therefore her mortgage expense claims are not credible. The plaintiff produced no mortgage payment records to substantiate this latter assertion.
The defendant asserts that at the time of the decree, health insurance was furnished to her as an incident of her employment and now it costs her $34 per week. In addition, she claims that the plaintiff can set his own salary, that the evidence showed that his business had expanded in the interim, a new store having been opened by him, and that the plaintiff was able to obtain a $70,000 loan (co-signed by his father) to do so. The plaintiff's business has, in addition to him, approximately five employees, some part-time, and has increased its employment by one part-time sales person since the decree of dissolution was entered.
It is significant to note that although neither party provided the court with a value of plaintiff's furniture business, defendant offered into evidence the company financial statements for the fiscal years ending June 30, 1992 and 1991. Although a review of this exhibit shows a decline in gross sales from $476,082 to $442,294, the gross profit declined only by $6,000 and the net income before taxes was almost identical. More importantly, the financial statement reveals total assets after depreciation of $274,898 less liabilities of $120,728, leaving a stockholder's equity of $154,170, 94 percent of which is owned by the plaintiff. The plaintiff, as president and majority stockholder of his company, has control of over $100,000 in accounts receivable plus $143,694 in inventory and other fixed assets. He also has an earning capacity, as shown in 1991, of over $600 per week.
When viewing the parties' financial conditions and status as a whole, and considering that the plaintiff's assets have increased from the time of dissolution to the present from approximately $25,000 plus the life insurance cash values ($82,130 shown on his affidavit plus the publicly-held stock, less the conveyance of his one-half interest in the dwelling then valued at $60,500) to about CT Page 3711 $200,000, while the wife's assets have declined from $26,395 plus her life insurance cash value to a negative net worth, the superiority of the resources available to him, his present wife's contribution to his expenses, and his greater earning capacity and self-imposed salary decrease clearly overshadow the plaintiff's claim of a substantial change in circumstances of the parties as exemplified by his reduction in income, the wife's modest increase in gross income and over withholding of state income tax. The advent of the state income tax applied proportionately to both parties and is not a factor, and the court has no probative evidence that the defendant over states her mortgage payments. Although, as the plaintiff points out, the child support and alimony orders account for a substantial amount of plaintiff's net income, he has substantial assets and resources to meet these obligations. His duty to support his growing teenage son is one of priority over his other obligations and has primacy. Hence, his claim of a substantial change in financial circumstances fails.
C. Substantial Deviation from the Child Support Guidelines
General Statutes 46b-86(a) provides in relevant part:
 . . . any final order for the periodic payment of support may at any time thereafter be continued, set aside, altered or modified by said court . . . upon a showing that the final order for child support substantially deviates from the child support guidelines established pursuant to section 46b-215a, unless there was a specific finding on the record that the application of the guidelines would be inequitable or inappropriate. There shall be a rebuttable presumption that any deviation of less than fifteen percent is not substantial and any deviation of fifteen percent or more from the guidelines is substantial. Modification may be made of such support order without regard to whether the order was issued before, on CT Page 3712 or after May 9, 1991. In determining whether to modify a child support order based on a substantial deviation from such child support guidelines the court shall consider the division of real and personal property between the parties set forth in the final decree and the benefits accruing to the child as the result of such division. . . ."
And the court in a modification proceeding must consider General Statutes 46b-215b(b) which reads:
 (b) In any proceeding for the establishment or modification of a child support award, the child support guidelines shall be considered in addition to and not in lieu of the criteria for such awards established in sections 46b-84, 46b-86, 46b-130, 46b-171, 46b-172, 46b-198, 46b-215, 17-324 and 17-578.
The starting point of the court's inquiry on this ground is the child support order of $200 per week, entered as part of the decree of dissolution on March 21, 1991, at which time the plaintiff's net disposable income was $577.28. As no child support computation worksheet was in the file, the court looks to the child support guidelines issued pursuant to Public Act 89-203 which became effective March 1, 1991 and were applicable to the child support determination made here. As Jacob was 12 at that time, the father's child support obligation under the guidelines would have been $167 per week. The actual order of $200 per week was a deviation from the guidelines of $33 per week, or 19.8 percent. At that time, the trial court did not make, nor was it requested to, a specific finding on the record that the application of the guidelines would be inequitable or inappropriate.
At the present time, the plaintiff's net income of $385.03 per week[4] shown in his affidavit and as computed by the parties in a computation worksheet calls for a child support obligation for the father of $112 per week; and, as he is ordered to pay $200 per week, deviates from the guidelines by 79.5 percent. CT Page 3713
General Statutes 46b-215b(a) provides that the child support guidelines shall be considered in all determinations of child support amounts, and further provides that in such determinations there shall be a rebuttable presumption that the amount of such awards which resulted from the application of the guidelines is the amount to be ordered. This presumption may be rebutted by a specific finding on the record that their application would be inequitable or inappropriate.
And, our Appellate Court has recently held that unless there is a specific finding on the record that would allow the presumption to be rebutted, child support must be in the amount of the guidelines. See Savage v. Savage,25 Conn. App. 693, 698 (1991).
The specific finding of inequity or inappropriateness became even more compelling when General Statutes 46b-86(a) was amended in 1990 to add the additional ground for child modification that the plaintiff claims here, that is a showing of a substantial deviation from the guidelines, unless there was a specific finding on the record that the application of the guidelines would be inequitable or appropriate. See McHugh v. McHugh, 27 Conn. App. 724, 728 (1992).
The McHugh court went on to say at pp. 728-729:
"It follows, therefore, that once the court enters an order of child support that substantially deviates from the guidelines, and makes a specific finding that the application of the amount contained in the guidelines would be inequitable or inappropriate, as determined by the application of the deviation criteria established in the guidelines, that particular order is no longer modifiable solely on the ground that it substantially deviates from the guidelines. By the same token, in the absence of such a specific finding, the order is continually subject to modification on the ground of a substantial deviation from the guidelines. (emphasis added).
As there was no such specific finding on the record in this case, the order is subject to modification, and a rebuttable presumption arises pursuant to General Statutes46b-86(a) that the deviation from the guidelines, as here, CT Page 3714 79.8 percent in excess thereof, is substantial.
The defendant tries to avoid the existence of the presumption by pointing to Defendant's Exhibit 1, an agreement calling for nonmodifiable support and alimony of $300 per week to be payable by the plaintiff father until Jacob's 18th birthday. Although the agreement was signed by the parties on March 11, 1991, there is no evidence that counsel were involved in the preparation of the agreement, or that it was presented to the trial court which entered the dissolution. Moreover, there is no transcript of the proceedings before the trial court indicating that either party or their counsel referred to Exhibit 1 during the proceedings. Finally, the separation agreement dated March 21, 1991, which was presented to the trial court and which the trial court found to be fair and equitable, contained no reference to nonmodifiability of the child support order and specifically stated in paragraph 17h thereof: This agreement contains the entire understanding of the parties and there are no representations, warranties, covenants or undertakings other than those expressly set forth herein.
This claim therefore has no merit, and Exhibit 1 and any other unexpressed intentions of the parties as to the deviation from the guidelines cannot substitute for the specific finding by the trial court of inequity or inappropriateness required by General Statutes 46b-86(a) to avoid the rebuttable presumption.
The defendant, therefore, has the burden of showing that the modification of the existing child support order to conform to the guidelines would be inequitable or inappropriate.
In child support modification proceedings, General Statutes 46b-215b(b) requires the court to consider the guidelines in addition to, and not in lieu of the criteria established in 46b-84 and 46b-86. However, it does not require that they be rigidly applied to all determinations of child support. Battersby v. Battersby, 218 Conn. 467, 468-69
(1991).
In determining whether the defendant has satisfied her burden, the court must consider the factors set forth in the deviation criteria and the general provisions of the CT Page 3715 child support guidelines as well as the specific child support figures provided for the plaintiff's disposable income level.
The Commission stated with respect to the deviation criteria: "The guidelines . . . include a complete listing of specific deviation criteria. In addition, the Commission has expanded the general criteria to ensure that orders are in the best interests of the child and are equitable to the financial interests and needs of the parties." See Child Support Guidelines, issued pursuant to Public Act 89-203 (eff. March 1, 1991), page 3. In its preface to its listing of specific deviation criteria, the Commission stated:
 "The amount of support indicated by the guidelines is presumed to be the appropriate level of support. However, the presumption may be rebutted by a specific finding on the record that the application of the guidelines would be inequitable or inappropriate in a particular case, as determined by proof of the existence of one of the following criteria:
 (A) Substantial assets owned by a party;
 (B) Present and potential earning capacity of a party. . . Id., 8.
As stated in part IIA of this memorandum, the plaintiff now owns and controls approximately $200,000 in assets. These are by any definition of the word, substantial. He has demonstrated a potential past and present earning capacity that would justify the imposition of a $200 weekly order. He controls and has the power to control his salary and the cash flow of his company. He has the ability to borrow, and has borrowed $70,000 to expand his company. His company has accounts receivable which may be resorted to.
In view of the plaintiff's substantial assets and earning capacity and the growing needs of his teenage son, it is both equitable and appropriate for him to pay the CT Page 3716 continued child support obligation of $200 per week.
The court concludes for these reasons that the defendant has met her burden of proof and shown the existence of substantial assets and present and potential earning capacity of the plaintiff, and under these circumstances it would be inequitable or inappropriate to apply the guidelines mechanically. The court has also considered all of the factors established in General Statutes 46b-84 and 86.
The plaintiff's motion to modify the child support order is denied.
 II.
Defendant's Motion for Contempt
The decree of dissolution provided that the defendant maintain health insurance coverage for Jacob through her place of employment and that the plaintiff husband would be obligated to pay 75 percent of all medical, dental and all health expenses for Jacob which are uncovered by health insurance. The wife was responsible for 25 percent. The parties modified this order on November 18, 1991, by written stipulation made a court order as follows:
"Father shall pay the 50 percent of counseling charges not covered by mother's insurance." (emphasis added). The defendant claims that the plaintiff refused to pay 50 percent of the counseling bills and 75 percent of certain other medical bills, and claims $826 due her.
The plaintiff claims that the order was ambiguous as to whether it meant 50 percent of unreimbursed or uncovered counseling expenses, or the uncovered 50 percent of such expenses as the defendant claims. The plaintiff testified that she called the counselor and determined that the sessions were $50 each, that the insurance coverage would pay $25 per session, and that the stipulation intended that father pay the other $25 per session.
The plaintiff further claims that initially the defendant presented him with a ledger sheet prepared by her (Defendant's Exhibit 5) claiming that he owed her 75 percent of the entire counseling charge, without regard to insurance. CT Page 3717 He further claims that defendant would not provide him with insurance company documentation.
The court finds that the order could be reasonably deemed ambiguous when considered in the light of the mutual distrust and hostility existing, and that it depended upon extraneous representations by the defendant to the plaintiff, and under these circumstances plaintiff was not in contempt for failure to pay the counseling charges. Indeed, it is well settled that contempt will not lie for failure to obey an ambiguous order. See Commissioner v. Youth Challenge of Greater Hartford, Inc., 219 Conn. 657, 666 (1991).
Moreover, plaintiff through his counsel has expressed a willingness to pay any unreimbursed health expenses he actually owes forthwith, but desires verification before he does so. Therefore, even if there was a contempt, he has shown a willingness to purge himself thereof. There was no credible evidence to support defendant's other claims of contempt on the part of the plaintiff.
The court therefore denies the motion to adjudge the plaintiff in contempt, and construes the stipulation and November 18, 1991 order to require the plaintiff to pay the defendant $25 toward each counseling session for the child. The court orders that the defendant submit copies of all health provider bills to the plaintiff, together with copies of insurance company statements showing payments by the insurance company and a statement of her calculation of the amount claimed to be due her from him. The plaintiff shall then pay to plaintiff any amount undisputed by him within 30 days of receipt of such verified bills. As to any disputed bills, or amounts claimed to be due, the parties are left to their appropriate remedies.
Teller, J.