[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR CLARIFICATION (DATED AUGUST 7, 2001), MOTION FOR CONTEMPT (DATED AUGUST 7, 2001), MOTION TO DISMISS POST-JUDGMENT PLAINTIFF'S MOTION FOR CLARIFICATION ORDER (DATED SEPTEMBER 25, 2001), AND MOTION FOR MODIFICATION POST JUDGMENT (DATED OCTOBER 4, 2001)
On January 24, 1992, a trial court, Ballen, J., entered an order dissolving the marriage of these litigants. Individual counsel represented each individual.
At the time of the dissolution the plaintiff was a Major in the Army National Guard Reserve Program. The trial court dissolution order included provisions for property division. Paragraph 14 of that judgment provided:
 The husband shall execute a Qualified Domestic Relations Order when his United States Army pension vests giving the wife an interest equal to twenty percent of what he would have been entitled to receive if he were vested as of the date of this decree.
Pursuant to the trial court's judgment, the plaintiff's counsel prepared a Qualified Domestic Relations Order (QDRO). In that September 12, 1994, document both parties stipulated in relevant part: CT Page 6815
 "The Decision, at Paragraph 14, directs the transfer to the Alternate Payee [plaintiff] by the Participant [defendant] of an interest in the Plan equal to twenty percent (20%) of what said participant would be entitled to if he were vested as of the date of the judgment. . . .
 "The court hereby orders and approves the transfer to the Alternate Payee of a sum from the Plan equal to twenty percent (20%) of the Participant's Deferred vested Pension Benefits under the Plan as of January 24, 1992, as if the Participant had terminated employment on that date. Said benefits are payable in the amount of $1,271.33 per month upon the Participant's attaining the age of sixty (60). At the time of the distribution of the benefit assigned hereunder, as set forth below in the following paragraph, the Alternate Payee shall be entitled to the actuarial equivalent of twenty percent (20%) of the amount set forth (specifically 20% thereof is $254.27 per month), based on her life expectancy. . . .
 "The benefits assigned hereunder shall be distributed to the Alternate Payee immediately upon the date that the participant is entitled to a distribution under the Plan. Accordingly, the benefits assigned hereunder shall begin being distributed to the Alternate Payee immediately upon the Participant's attaining age 60. . . .
 "Upon receipt of this Order and when the participant is eligible to receive immediate benefit under the Plan, the Plan Administrator shall separately account for the amounts payable to the Alternate Payee ("the segregated amount"). The Alternate Payee shall be entitled to receive the value of such segregated amount from the Plan. In the event the Alternate Payee shall die before distribution is made to her hereunder, the segregated amount shall be paid to a beneficiary named by her, or, if none is so named, to her estate."
The plaintiff filed the first of the instant motions in August 2001. In her Motion for Clarification she sought an order establishing the amount and duration of monthly payments due to her pursuant to this QDRO. The plaintiff simultaneously filed a Motion for Contempt arguing that the defendant "has received money, pursuant to his military pension, with full knowledge that the plaintiff has not received any money." In conjunction with this latter motion, the plaintiff sought back payments, CT Page 6816 court costs and counsel fees
In response to these initial motions, the defendant filed a Motion to Dismiss wherein he argued that the plaintiff's request for clarification was nothing more that an attempt to modify a property settlement.
On October 4, 2001 the plaintiff filed the last relevant motion, a post-Judgment Motion to Modify. Therein she argued that there has been a substantial change of circumstances in that the defendant received a retirement pension that was not fully contemplated at the time of the dissolution. She also suggested that there has been a significant increase in the defendant's income.
I. FACTS OF THE CASE
At the time of the January 1992 dissolution, the defendant was a member of the Connecticut National Guard. According to information supplied by the Department of Defense Finance Center, as of that date the defendant had accumulated nearly 5,000 retirement points. Accordingly, he would have been eligible for a pension in the amount of $1,318.11 per month upon retirement. Because the defendant was a member of the National Guard at the time of the court judgment, he could not collect any of that pension until he reached age sixty.
There are two different military retirement programs. The first program, the Active Guard Reserve Program (Active) requires that the military member complete twenty years of active duty military service. Upon completion, the military member can retire immediately with full pension benefits. The retirement benefits formula is fixed by statute.
The second retirement program is part of the National Guard Reserve Program (National Guard). A participating National Guard member must complete twenty years of reserve service, for the most part selective weekend and summer assignments. Retirement benefits are based upon a point system. Once the military member completes the requisite amount of reserve duty, at age sixty he or she is eligible to receive a pension. Once again, the retirement benefits formula is fixed by statute.
The Department of Defense Finance Center provides each military member with an annual statement concerning the status of accrued retirement points. In January 1992, the defendant anticipated that he would eventually receive the National Guard military pension.[1]
Prior to the entry of a final judgment and during the course of the preparation of a QDRO, both the plaintiff and the defendant spoke with Colonel Michael Tuohy, Staff Judge Advocate for the Connecticut National CT Page 6817 Guard. Additionally, both had access to an annual computer-generated analysis of potential retirement benefits.
In February 1995, the Department of Defense notified the defendant that his National Guard pension had vested. The defendant could begin to receive his pension at age sixty. Subsequently, the defendant earned a series of promotions. He ultimately attained the rank of Colonel. As a result, the defendant was eligible to extend his participation in the Active Guard. This in turn entitled the defendant to retire from the military after twenty years of active duty. Consequently, in November 1999, the defendant began receiving a military pension in the amount of $858.00 per week.[2] The plaintiff has not received any portion of that retirement benefit.[3]
II. LEGAL ANALYSIS
A general premise in each of the plaintiff's motions is her argument that the defendant has improperly withheld a portion of his military pension. Her central claims are summarized in her Motion for Clarification Order wherein the plaintiff argues that the September 1994 QRDO"
 [I]s of no effect since military retired pay is an entitlement based on the service member's rank and number of years of creditable service at the time of retirement. It is paid on a monthly basis and, as such, is not a fund which can be valued or divided as of some point in time. . . .
 "Notwithstanding any figures that were set forth in a Qualified Domestic Relations Order that was prepared, the plaintiff is entitled to a higher payment due to erroneous assumptions in the calculation in the null and void Qualified Domestic Relations Order."
Thus, the plaintiff is seeking both a higher payment than that contained in the 1994 QDRO as well as immediate receipt of that payment. The defendant contends that this court cannot address any of the plaintiff's claims.
A. MOTION TO DISMISS
The defendant has filed a Motion to Dismiss[4] wherein he maintains that this court lacks jurisdiction to hear any of the plaintiff's pending motions. "Once the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented."Clemente v. Clemente, 34 Conn. App. 641, 644 n. 5, 643 A.2d 874 (1994) CT Page 6818 (citations and internal quotations omitted). Every presumption is given in favor of jurisdiction. Laurer v. Zoning Commission, 220 Conn. 455,460, 600 A.2d 310 (1991). "Thus, if a motion can fairly be construed as seeking an effectuation of the judgment rather than a modification of the terms of the property settlement, this court must favor that interpretation." Woodward v. Woodward, 44 Conn. App. 99, 101-102,683 A.2d 1010 (1997) (quotations and internal citations omitted).
This court recognizes that it has no jurisdiction to open a judgment and affect a property assignment except within four months after the original judgment. Clemente, 34 Conn. App. at 645; Connecticut General Statutes 52-212a.[5] However, a court has the equitable power to fashion whatever orders are necessary to protect the integrity of an original judgment or order. Roberts, 32 Conn. App. at 471. The plaintiff claimed in her requests for relief that the defendant has engaged in a course of conduct that has significantly affected the original court decree. If these allegations are correct, the defendant's conduct undermines the integrity of the original court order.
Although this court can neither modify nor alter the terms of the original judgment, it has the power to enforce its own orders.
The Motion to Dismiss is denied.
B. MOTION FOR MODIFICATION
In her post-Judgment Motion to Modify the plaintiff argues that there have been two substantial changes of circumstances. First, she maintains that the defendant received a higher retirement pension than that contemplated at the time of the dissolution. She suggests that as a consequence of the enlarged retirement fund, this court should modify the original judgment and increase her alimony allocation. As an additional basis for modification, the plaintiff contends that there has been a significant increase in the defendant's income.
Traditionally a trial court is without power to modify any orders for distribution or assignment of marital property. Bunche v. Bunche,180 Conn. 285, 289, 429 A.2d 874 (1980). Connecticut General Statutes Sections 46b-81,[6] 46b-86.[7] Although the plaintiff has presented her motion to modify as a request for increased alimony payments, the core of her argument involves her perception that she is entitled to an additional portion of the defendant's military retirement.
The statutory prerequisites for modification of alimony and child support are clear. There must be a substantial change in circumstances. The plaintiff has the burden of proof in demonstrating a substantial CT Page 6819 change of circumstances. That burden has not been met. Indeed, since the date of the last hearing concerning alimony, the defendant's income has diminished while the plaintiff's has increased.
There is an additional, more compelling basis for rejection of the plaintiff's request for modification. There can be no question that the original division of the defendant's pension constituted an assignment of property. Bender v. Bender, 258 Conn. 733, 785 A.2d 197 (2001); Krafickv. Krafick, 234 Conn. 783, 663 A.2d 365 (1995). As such, it is not modifiable. Although the plaintiff suggests that the property distribution was erroneous insofar as the court and litigants relied upon an incorrect conclusion concerning the defendant's ultimate retirement benefits, the court was entitled to rely upon the evidence presented at the time of the judgment.
The plaintiff's suggestion that fraud, duress or coercion induced the judgment is not persuasive. The fact that the plaintiff may have disagreed with the ultimate judgment, or that she accepted the court orders reluctantly, hardly constitutes the high degree of evidence needed to void a valid judgment.
The plaintiff bore the burden of proving fraud, duress or coercion.Pinder v. Pinder, 42 Conn. App. 254, 263, 679 A.2d 973 (1996). She has provided no evidence to support these serious claims.
The Motion to Modify is denied.
C. MOTION FOR CLARIFICATION
The plaintiff seeks clarification of those portions of the trial court judgment wherein she was awarded a percentage of the defendant's military pension. The defendant objects to any such clarification preferring to continue the existing arrangement wherein he receives his entire pension, unaffected by any existing court order, until he reaches the age of sixty. The defendant maintains that his former wife's Motion for Clarification is simply a disguised request to modify a property distribution.
The matter of Holcombe v. Holcombe, 22 Conn. App. 363, 576 A.2d 1317
(1990) is instructive. In that case, the plaintiff argued a post-judgment order concerning liabilities from the sale of the former marital home constituted an improper disposition of property. In Holcombe the Appellate Court noted "[m]otions for interpretation or clarification, although not specifically described in the rules of practice, are commonly considered by trial courts and are procedurally proper. . . . There is no time restriction imposed on the filing of a motion for CT Page 6820 clarification. . . . Although a judgment may not be opened or set aside after four months . . . under the common law, judgments may be `corrected' at any time." Holcombe, 22 Conn. App. at 366 (internal quotations and citations omitted). provided there is no change in the substance of the property distribution, a trial court is permitted to correct any perceived ambiguity.
This court has an obligation to construe the language of the 1992 judgment and the subsequent 1994 QDRO. The parties' subjective desires are irrelevant. The court must determine the intent of the parties as expressed in the language of the court order.
Turning to the 1992 judgment, paragraph 14 provided:
 The husband shall execute a Qualified Domestic Relations Order when his United States Army pension vests giving the wife an interest equal to twenty percent of what he would have been entitled to receive if he were vested as of the date of this decree.
The subsequent QDRO (emphasis added) specified:
 "The Decision, at Paragraph 14, directs the transfer to the Alternate Payee [plaintiff] by the Participant [defendant] of an interest in the Plan equal to twenty percent (20%) of what said participant would be entitled to if he were vested as of the date of the judgment. . . .
 "The court hereby orders and approves the transfer to the Alternate Payee of a sum from the Plan equal to twenty percent (20%) of the Participant's Deferred vested Pension Benefits under the Plan as of January 24, 1992, as if the participant had terminated employment on that date. Said benefits are payable in the amount of $1,271.33 per month upon the Participant's attaining the age of sixty (60). At the time of the distribution of the benefit assigned hereunder, as set forth below in the following paragraph, the Alternate Payee shall be entitled to the actuarial equivalent of twenty percent (20%) of the amount set forth (specifically 20% thereof is $254.27 per month), based on her life expectancy. . . .
 "The benefits assigned hereunder shall be distributed to the Alternate Payee immediately upon the date that the Participant is entitled to a distribution under the Plan. Accordingly, the benefits assigned hereunder CT Page 6821 shall begin being distributed to the Alternate Payee immediately upon the Participant's attaining age 60. mm.
 "Upon receipt of this Order and when the participant is eligible to receive immediate benefit under the Plan, the Plan Administrator shall separately account for the amounts payable to the Alternate Payee ("the segregated amount"). The Alternate Payee shall be entitled to receive the value of such segregated amount from the Plan. In the event the Alternate Payee shall die before distribution is made to her hereunder, the segregated amount shall be paid to a beneficiary named by her, or, if none is so named, to her estate."
Although the plaintiff has requested exhaustive relief, the question before the court is quite narrow. This court is required to examine the 1992-property distribution and determine the nature of the property contained in the court judgment, the value of the property contained in the judgment and, finally, the method of distribution mandated by the court judgment.
The Connecticut Supreme Court decision in Bender v. Bender,258 Conn. 733, 785 A.2d 197 (2001), is helpful. In that case, the trial court awarded the plaintiff wife a portion of her husband's unvested civil service pension. In determining the propriety of the trial court award, the Supreme Court noted, "As a general framework, [t]here are three stages of analysis regarding the equitable distribution of each resource: first, whether the resource is property within § 46b-81 to be equitably distributed (classification); second, what is the appropriate method for determining the value of the property (valuation); and third, what is the most equitable distribution of the property between the parties (distribution)." Bender, 258 Conn. at 740. (internal quotations and citations omitted).
After concluding that unvested pensions are a form of property subject to distribution, Bender, 258 Conn. at 740-750, the Connecticut Supreme Court addressed the possibility that a pension might change subsequent to the entry of a marriage dissolution. The Supreme Court dismissed any suggestion that these uncertainties invalidated a property distribution, concluding,
 We believe that any uncertainty regarding vesting is more appropriately handled in the valuation and distribution stages, rather than in the classification stage. B. Turner, Equitable Distribution of Property (2d Ed. 1994) § 6.09, p. 330; Cohen v. Cohen, CT Page 6822 937 S.W.2d 823, 830 (Tenn. 1996) (`[c]ontingencies should be considered on the issue of method of distribution, perhaps, but not on the determination of classification'). Bender, 258 Conn. at 750.
The Bender court cautioned that substance, not form, controls the distribution of marital assets.
In the present case, there can be no question that the trial court, through its property analysis, awarded the plaintiff a portion of the defendant's military pension. The issue before the court is the method to determine the value and distribution of those benefits. The Bender court recognized two proper approaches: (1) the present value method[8] and (2) the present division method of deferred distribution.
In the present case, the trial court utilized the second accepted method for valuing and distributing property, the present division method. The court clearly determined the percentage share of the retirement benefits to which the plaintiff would be entitled. Under that method "upon maturity, a fixed percentage of the pension be distributed to each spouse." Bender, 258 Conn. at 758. (emphasis added)[9] See alsoKrafick v. Krafick, 234 Conn. 783, 803-804, 663 A.2d 365 (1995). "Once the employee with a vested pension interest reaches the age of retirement and elects to retire, his rights are said to be vested and matured." Krafick, 234 Conn. at 789 n. 12.
In the present case, the trial court's decision was unequivocal. The plaintiff received twenty percent of the value of the defendant's pension. Value was set at the date of the judgment and further defined in the QDRO as $254.27. The date of distribution was equally clear. Both the judgment and the QDRO define that date as immediately upon the defendant's receipt of his benefits.
The plaintiff suggests that she is entitled to twenty percent of the retirement actually received by the defendant, arguing that. the current military pension is substantially higher than that contemplated at the time of the dissolution.[10] Contrary to the plaintiff's position, the trial court order fixed the date of valuation as the date of the 1992 dissolution. Any increase in the value of the defendant's retirement subsequent to that judgment remains the defendant's sole property.
The defendant argues that the plaintiff cannot receive any of the military retirement benefits until the defendant becomes sixty years old. He has confused valuation and distribution. Because the defendant was in the National Guard at the time of the dissolution, he was not eligible for a pension in 1992 until be became sixty. The trial court's CT Page 6823 reference to age sixty merely establishes the type of pension that the court anticipated the defendant would receive. The property valuation was based on that perception.
The court's reference to the defendant's age modified the amount of the benefits, not the date of their distribution. As the 1994 QDRO stated, "The benefits assigned hereunder shall be distributed to the Alternate Payee immediately upon the date that the participant is entitled to a distribution under the Plan." Although the QDRO then stated that the benefits would be distributed when the defendant reached the age of sixty, that phrase merely referenced the desire of the parties that they receive all property immediately. The QDRO then specified, "Upon receipt of this Order and when the participant is eligible to receive immediate benefit under the Plan, the Plan Administrator shall separately account for the amounts payable to the Alternate Payee (`the segregated amount')".
Were the defendant to prevail in his argument, he would be allowed to receive all of his retirement benefits, plus a portion of those attributable to the plaintiff's interest, immediately. Given the fact that a significant fraction of those benefits accrued during the marriage, the defendant's suggested scenario is both illogical and inequitable.[11]
There is no dispute that the trial court's judgment specified that the plaintiff would receive her portion of the military pension immediately upon the defendant's receipt. The issue here is not whether the original order is a binding property distribution, but whether this court can effectuate the original judgment. There should be no question that the court has this jurisdiction.
The litigants' reliance on Rosato v. Rosato, 40 Conn. App. 533,671 A.2d 838 (1996) is misplaced. In Rosato, at the time of dissolution, the defendant wife received a survivorship interest in the plaintiff husband's pension. Years later, in an attempt to explain its original order, the trial court awarded the plaintiff fifty-five percent of the pension that the defendant received. Because the original judgment did not distribute any portion of plaintiff's pension, the subsequent order was an improper property assignment. Rosato, 40 Conn. App. at 535. In the present case, the trial court properly awarded a portion of the defendant's pension. The effect of this order is to specify the meaning of the term "immediately."
The plaintiff's motion for clarification does not seek to modify or add to the terms of the 1992 judgment. Instead, she claims that the defendant is impeding a property distribution. If this court cannot in the exercise CT Page 6824 of its equitable powers insure that an appropriate distribution occurs, it would be unable to safeguard the integrity of its original judgment.
Each of the litigants should receive their appropriate share of the retirement benefits. The plaintiff's motion seeks only to effectuate the judgment by asking the court to determine when the benefits will be distributed. It is within the equitable powers of this court "to fashion whatever orders [are] required to protect the integrity of [its original] judgment." Commissioner of Health Services v. Youth Challenge of GreaterHartford, Inc., 219 Conn. 657, 670, 594 A.2d 958 (1991) (internal citations and quotations omitted). The plaintiff was entitled to receive her portion of the military pension on the same date the defendant received his first retirement check.
The plaintiff's Motion for Clarification is granted. Her portion of the defendant's military pension should have been distributed immediately upon the defendant's receipt of his pension.
D. Motion for Contempt
Through her motion for contempt the plaintiff has asked the court to find that the defendant willfully violated the dissolution judgment in that he failed to allow the plaintiff to receive a portion of the defendant's military pension immediately upon his retirement. The plaintiff seeks costs and attorney's fees.
Connecticut procedure authorizes motions for contempt, one of the few vehicles available to enforce compliance with court orders. The burden of establishing a prima facie showing of contempt, in this case the willful disobedience of a court order, falls upon the plaintiff.
In the present action, the plaintiff has established the existence of an order. She has failed to prove that the defendant willfully failed to comply with that order.
Acknowledging the broad equitable powers of this court, ". . . a finding of indirect civil contempt must be established by sufficient proof that is premised upon competent evidence presented to the trial court in accordance with the rules of procedure as in ordinary cases." (Citations omitted; internal quotation marks omitted.) Sqarellino v. Hightower,13 Conn. App. 591, 595-96, 538 A.2d 1065 (1988). This plaintiff has failed to do. In light of this evidentiary deficiency, the motion must be denied.
E. Attorney's Fees and Costs
CT Page 6825
Connecticut General Statutes § 46b-87 provides that once contempt for failure to comply with orders has been found in a family matter, the court may sanction a noncomplying party through the award of attorney fees. See Eldridge v. Eldridge, 244 Conn. 523, 534, 710 A.2d 757 (1998)
In considering whether to award attorney's fees in this matter, this court has reviewed the evidence relating to all the motions that were the subject of this hearing, including the parties' financial affidavits and other evidence relating to actual income and earning capacity. In light of the foregoing, the requests for attorney's fees and costs are denied.
Orders shall enter on these motions as herein noted.
 ___________________ DEWEY, J.