STATE OF CONNECTICUT *v.* CHRISTOPHER HASFAL
(AC 26845)

Flynn, C. J., and Harper and Peters, Js.

200

Argued November 15, 2007—officially released March 4, 2008

*Brendon P. Levesque*, special public defender, with whom were *Daniel J. Krisch* and, on the brief, *Michael S. Taylor* and *Philip C. Pires*, legal intern, for the appellant (defendant).

*Melissa L. Streeto*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, former state's attorney, *Adam B. Scott*, supervisory assistant state's attorney, and *Kathleen A. Dwyer*, assistant state's attorney, for the appellee (state).

*Opinion*

PETERS, J. In this criminal appeal from a conviction of the crimes of violation of a protective order and possession of narcotics, the dispositive issue is whether the defendant, while being interrogated by the police in his East Hartford motel room after 12:30 a.m., was in custody when he incriminated himself in response to a police officer's question. The defendant's inculpatory admission triggered his arrest for criminal violation of a protective order, and that arrest, in turn, resulted in the discovery of crack cocaine in his possession during a standard search at the station house. The defendant

maintains in this appeal, as he did at trial, that the trial court should have granted his motion to suppress the inculpatory statement and the subsequently discovered narcotics because the police improperly failed to give him *Miranda* warnings[1] prior to initiating their interrogation. Because we agree with the trial court that the defendant was not then in custody, we affirm its judgment convicting him as charged.

In a substitute information filed on May 6, 2005, the state charged the defendant, Christopher Hasfal, with the crimes of criminal violation of a protective order in violation of General Statutes § 53a-223[2] and possession of narcotics in violation of General Statutes § 21a-279 (a).[3] After a jury trial, he was convicted on both

---

[1] *Miranda* v. *Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966) ("[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.").

[2] General Statutes § 53a-223 provides: "(a) A person is guilty of criminal violation of a protective order when an order issued pursuant to subsection (e) of section 46b-38c, or section 54-1k or 54-82r has been issued against such person, and such person violates such order.

"(b) Criminal violation of a protective order is a class D felony."

[3] General Statutes § 21a-279 (a) provides: "Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than seven years or be fined not more than fifty thousand dollars, or be both fined and imprisoned; and for a second offense, may be imprisoned not more than fifteen years or be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for any subsequent offense, may be imprisoned not more than twenty-five years or be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

counts. The court sentenced the defendant to a total effective term of seven years imprisonment, execution suspended after three years, and five years of probation with special conditions. The defendant has appealed.

The facts underlying the defendant's interrogation are undisputed. The defendant first met the victim in 2002 at a lounge in East Hartford where she worked as a part-time exotic dancer. The two developed an intimate relationship that, in time, turned sour. On November 4, 2003, following the defendant's arrest resulting from a domestic incident with the victim, a protective court order was issued against the defendant pursuant to General Statutes § 46b-38c (e).[4] The protective order expressly required the defendant to "[r]efrain from entering the [v]ictim's place of employment." In violation of that order, on the afternoon of December 8, 2003, the defendant entered the lounge and seated himself at the bar. Later that evening, the victim went to the East Hartford police department and lodged a complaint against the defendant.

Upon receiving the complaint, Officer Jeffrey Cutler of the East Hartford police department verified that a valid protective order was in place, which precluded the defendant from entering the victim's place of employment. Cutler and Officer Kenneth Sullivan went

---

[4] General Statutes § 46b-38c (e) provides in relevant part: "A protective order issued under this section may include provisions necessary to protect the victim from threats, harassment, injury or intimidation by the defendant, including, but not limited to, an order enjoining the defendant from (1) imposing any restraint upon the person or liberty of the victim, (2) threatening, harassing, assaulting, molesting or sexually assaulting the victim, or (3) entering the family dwelling or the dwelling of the victim. Such order shall be made a condition of the bail or release of the defendant and shall contain the following language: 'In accordance with section 53a-223 of the Connecticut general statutes, any violation of this order constitutes criminal violation of a protective order which is punishable by a term of imprisonment of not more than five years, a fine of not more than five thousand dollars, or both. . . .' "

to the lounge and corroborated that the victim had been working there that day.

The officers then traveled to East Hartford's Madison Inn, the defendant's temporary residence. The officers arrived at the motel after 12:30 a.m. on December 9, 2003. When Cutler knocked on the defendant's door and announced that he was with the East Hartford police department, the defendant permitted the officers to enter. Cutler asked the defendant if he had been at the victim's place of employment, and the defendant answered affirmatively. Cutler immediately handcuffed the defendant, telling him that he was under arrest.

After arresting the defendant, Cutler took him to the East Hartford police department. As part of the booking process, the defendant was subjected to a standard search incident to arrest. While removing his socks, the defendant "cupped" the underside of his foot with his hand. When he removed his hand from his foot a glassine bag fell to the floor. The bag contained a white granular substance that tested positive for crack cocaine.

On May 10, 2005, shortly after the commencement of the defendant's trial, he filed the motion to suppress that is the subject of his present appeal. In the motion, he claimed that (1) at the time of his inculpatory statement, he had been in custody and should not have been interrogated without having been advised of his *Miranda* rights, and (2) but for the improper taking of his statement, there would have been no grounds to search him and to discover the crack cocaine. After an evidentiary hearing outside the presence of the jury, at which Cutler and the defendant testified, the court denied the defendant's motion. The court expressly found that a reasonable person in the defendant's situation would not have believed that he was in custody.

As a result of the court's ruling, the jury heard Cutler's testimony regarding the defendant's inculpatory statement. The jury returned a verdict of guilty on both counts of the information. Accepting the verdict of the jury, the court sentenced the defendant to a term of imprisonment. The defendant has appealed. Additional facts will be set forth as necessary.

The dispositive issue in this appeal is whether the police should have given the defendant *Miranda* warnings in his motel room before questioning him about his earlier whereabouts. The defendant maintains that a reasonable person in his circumstances would have believed that he or she was in police custody at the time the defendant incriminated himself. We disagree.

Our Supreme Court has held that "[t]wo threshold conditions must be satisfied in order to invoke the warnings constitutionally required by *Miranda*: (1) the defendant must have been in custody; and (2) the defendant must have been subjected to police interrogation." (Internal quotation marks omitted.) *State* v. *Atkinson*, 235 Conn. 748, 757, 670 A.2d 276 (1996).

The state does not dispute that the facts of record establish that Cutler subjected the defendant to interrogation when he was questioned in his motel room. "[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island* v. *Innis*, 446 U.S. 291, 301, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980).

The controlling issue, therefore, is whether the defendant was in police custody at the time of his interrogation. *Miranda* warnings are not required before

"[g]eneral on-the-scene questioning as to facts surrounding a crime or other general questioning . . . in the fact-finding process . . . ." *Miranda* v. *Arizona*, supra, 384 U.S. 477. Our Supreme Court has stated: "Although we are concerned with protecting defendants against interrogations that take place in a police-dominated atmosphere, containing inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely . . . this court has also determined that [a] person, even if a suspect in a crime, is not in custody every time he is asked questions . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Britton*, 283 Conn. 598, 609, 929 A.2d 312 (2007); see also *Oregon* v. *Mathiason*, 429 U.S. 492, 495, 97 S. Ct. 711, 50 L. Ed. 2d 714 (1977). The defendant bears the burden of proof for establishing custody. *State* v. *Kirby*, 280 Conn. 361, 393, 908 A.2d 506 (2006).

A two part standard of review governs appellate review of a trial court's determination that a defendant was not "in custody" when he was interrogated by the police. We defer to the trial court's findings of fact unless they are clearly erroneous, but we conduct a plenary, scrupulous examination of the record in order to make an independent determination as to whether or not the defendant was "in custody." *State* v. *Pinder*, 250 Conn. 385, 409–12, 736 A.2d 857 (1999).

After the suppression hearing, the trial court made the following findings of fact. The East Hartford police were investigating a complaint that the defendant had violated a protective order. Sometime after 12:30 a.m. on the morning of December 9, 2003, two police officers went to the defendant's motel room, knocked and identified themselves. The defendant voluntarily answered his door and permitted the officers to enter his room. During the subsequent interrogation, the defendant "was compliant" and "was allowed" to interrupt the

questioning to use his telephone. When he was asked whether he had been to the complainant's place of employment, the defendant responded affirmatively, after which he was taken into custody.[5]

These factual findings are unchallenged on appeal and therefore are not clearly erroneous. Indeed, they are fully supported by additional testimony at the trial itself.[6]

Our plenary review of this factual record requires us to decide whether, in light of all the circumstances surrounding the defendant's interrogation, a reasonable person in the defendant's position would have believed that his or her freedom of movement was restrained to the degree associated with a formal arrest. *California* v. *Beheler*, 463 U.S. 1121, 1125, 103 S. Ct. 3517, 77 L. Ed. 2d 1275 (1983); *State* v. *Britton*, supra, 283 Conn. 604. In conducting this inquiry, our courts often have utilized the "free to leave" test, pursuant to which *Miranda* warnings are required only if, under the circumstances, a reasonable person would believe that he or she was not free to leave the scene of the interrogation. *State* v. *Pinder*, supra, 250 Conn. 410.

The "free to leave" test is a good fit for a *Miranda* inquiry when the police interrogate someone at a police

---

[5] The court expressly found that the defendant's contrary description of the events at the motel was not credible. "More particularly, the defendant's testimony that there were at least three officers present there; the demand that and pounding on the door that they be allowed to enter or else they would break down the door—the court finds that those statements are not credible, and that testimony is not credible."

[6] Sullivan, the second officer at the motel, testified during the trial and corroborated Cutler's testimony that the defendant had given the police permission to enter his room and had not objected to Cutler's questioning. Sullivan further testified that a telephone rang, but that no one had answered the telephone.

The defendant testified that he had admitted the police into his motel room after they had knocked on his door and that he had been arrested there when, in response to Cutler's questioning, he had acknowledged that he had been at the victim's place of employment.

station, but it is not necessarily a good fit for interrogation at other locations. Thus, other courts have held that the test is not a useful tool to ascertain the need for *Miranda* warnings when someone is detained pursuant to a routine traffic stop; *Berkemer* v. *McCarty*, 468 U.S. 420, 439–40, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984); is seated in a passenger bus; *Florida* v. *Bostick*, 501 U.S. 429, 436–37, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991); is in prison; *Cervantes* v. *Walker*, 589 F.2d 424, 428 (9th Cir. 1978); or in a hospital bed. *State* v. *Pontbriand*, 178 Vt. 120, 126, 878 A.2d 227 (2005). We are persuaded that it similarly is unsuitable for an inquiry about custody in this case, where it is unclear where else the defendant would have gone in the absence of his detention.

To determine whether the defendant's interrogation in his motel room was custodial, we must, therefore, go back to the underlying inquiry of whether a reasonable person in the defendant's position would have believed that he or she was in police custody of the degree associated with a formal arrest. See, e.g., *United States* v. *Salvo*, 133 F.3d 943, 948 (6th Cir.) (interrogation in college dormitory room), cert. denied, 523 U.S. 1122, 118 S. Ct. 1805, 140 L. Ed. 2d 944 (1998).

The United States Supreme Court has addressed the subject of police interrogations at a person's residence. In *Miranda* itself, the court, in dictum, expressed doubt that such an interrogation would be custodial, noting that "In his own home [the accused] may be confident, indignant, or recalcitrant. He is more keenly aware of his rights . . . within the walls of his home." (Internal quotation marks omitted.) *Miranda* v. *Arizona*, supra, 384 U.S. 449–50; see also *Beckwith* v. *United States*, 425 U.S. 341, 96 S. Ct. 1612, 48 L. Ed. 2d 1 (1976). In *Orozco* v. *Texas*, 394 U.S. 324, 89 S. Ct. 1095, 22 L. Ed. 2d 311 (1969), however, the court held that a custodial interrogation had occurred when four police officers

entered the bedroom of a murder suspect without his permission, close to 4 a.m., and interrogated him as he sat in bed. Id., 325. According to the testimony of one of the officers, the defendant was 'under arrest' and not free to go from the moment he gave his name. Id. Under those circumstances, the court concluded that the suspect had been significantly deprived of his freedom of action and that *Miranda* warnings were required. Id., 327.

We are not persuaded that *Orozco* governs this case. Unlike the facts of that case, the defendant voluntarily admitted the officers into his motel room residence. Although the hour was late, the record contains no finding that the defendant had been asleep or was drowsy when the officers knocked on his door.[7] He had access to a telephone. There is no credible evidence that Cutler conducted his interrogation of the defendant in an intimidating or accusatory fashion or that he questioned the defendant for a protracted period of time.[8]

Our Supreme Court also has addressed the subject of police interrogations at a person's residence, and we find these cases instructive. In *State* v. *Kirby*, supra, 280 Conn. 361, officers who were investigating a complaint of kidnapping and assault went to the defendant's home to get his side of the story. Id., 392. The defendant consented to the entry into his residence of five police officers at 4:30 a.m.; id., 394; and he cooperated with

---

[7] The defendant's brief asserts that he "was in and out of sleep and was startled when the officers knocked on his motel room door." The trial court, however, expressly rejected the defendant's self-serving description of what had transpired.

[8] As a prophylactic measure that serves to mitigate *Miranda* custody issues, the police often inform a suspect under interrogation of his or her freedom to leave. *United States* v. *Guarno*, 819 F.2d 28, 31–32 (2d Cir. 1987); *State* v. *Doyle*, 104 Conn. App. 4, 13, 931 A.2d 393, cert. denied, 284 Conn. 935, 935 A.2d 152 (2007). Although the defendant notes in his brief that neither officer told him that he was free to leave, under these circumstances, the "free to leave" test is not the dispositive inquiry.

their investigation, including telling them that he had tied up the complainant and kidnapped her for money. Id., 392–93. During the interrogation, the officers did not tell the defendant that he was free to leave, nor did he ask the officers to leave. Id., 394. The encounter lasted only ten to fifteen minutes, the officers' guns remained holstered, and the defendant was not handcuffed and arrested until after his admission. Id., 396. Our Supreme Court concluded that the trial court properly had determined that the defendant had not carried his burden of proving that he was in custody at the time he made his inculpatory statement to the police. Id., 394.

Similarly, in *State* v. *Johnson*, 241 Conn. 702, 699 A.2d 57 (1997), our Supreme Court concluded that an interrogation of a murder suspect in his home by two detectives was not custodial. Id., 720. In that case, too, the defendant allowed the detectives into his home, and cooperated with their interrogation. Id., 716–17. The court noted that the interrogation took place in "familiar surroundings" and that there was no evidence that the defendant was ever handcuffed or otherwise restrained at the time he made his statements, and the officers did not use or threaten the use of force or display their weapons. Id., 720. The court also thought it significant that the defendant had access to the telephone and never expressed a desire to leave or to stop talking. Id.

As in these precedents, there is nothing of record in this case that the officers questioned the defendant in a manner that would have led him to believe that "he . . . was in police custody of the degree associated with a formal arrest." (Internal quotation marks omitted.) *State* v. *Britton*, supra, 283 Conn. 604. The record reveals that the defendant allowed the officers to enter his room and that he freely answered Cutler's questions. During the brief interrogation, the defendant neither expressed a desire to stop talking, nor asked the officers

to leave. There was no threat or display of force on the officers' part, and the defendant was neither handcuffed nor restrained until he admitted that he had visited the victim's place of employment. The similarity of these facts to *Kirby* and *Johnson*, therefore, leads us to conclude that the trial court properly determined that the defendant was not in custody when he made his admission.

Despite these precedents, the defendant urges us to adopt the reasoning of the Maryland Court of Special Appeals in *Bond* v. *State*, 142 Md. App. 219, 788 A.2d 705 (2002), which concluded that a late night interrogation in a defendant's bedroom was custodial in nature. In that case, three uninvited police officers engaged in what the court described as accusatory questioning of someone who was in bed and only partially clothed. Id., 223–24. We are not persuaded that the facts of record in *Bond* are functionally the same as in the present case. Unlike *Bond*, the defendant in this case gave the police permission to enter his room and was not confronted by harshly accusatory interrogatory tactics.[9]

In light of our conclusion that we must affirm the trial court's determination that the defendant was not in custody at the time he incriminated himself, we also must affirm the court's admission of the defendant's inculpatory statement into evidence. It follows that the defendant's arrest and the subsequent search were not the product of an impermissible violation of his rights under the fifth amendment to the United States constitution.[10] His conviction therefore must stand.

[9] In addition, we note that the citation to the Maryland case appears for the first time in the defendant's reply brief. As has been noted on many occasions, a reply brief is not the proper vehicle for curing an omission in the appellant's brief. See, e.g., *Commissioner* v. *Youth Challenge of Greater Hartford, Inc.*, 219 Conn. 657, 659 n.2, 594 A.2d 958 (1991); *Kelley* v. *Tomas*, 66 Conn. App. 146, 163, 783 A.2d 1226 (2001).

[10] We note that the defendant has not cited the provisions of our state constitution in his claims for relief.

The judgment is affirmed.

In this opinion the other judges concurred.