## STATE OF CONNECTICUT *v.* ADA MANGUAL
## (AC 32122)

Robinson, Bear and Dupont, Js.

Argued April 14—officially released June 28, 2011

*Alice Osedach*, assistant public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Brett J. Salafia*, assistant state's attorney, for the appellee (state).

*Opinion*

ROBINSON, J. The defendant, Ada Mangual, appeals from the trial court's judgment of conviction, rendered after a jury trial, of possession of narcotics with the intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b) and possession of narcotics with intent to sell within 1500 feet of a public school in violation of General Statutes § 21a-278a (b). On appeal, the defendant claims that (1) the

court improperly denied her motion to suppress a statement that she made to police during the execution of a search and seizure warrant, and (2) her constitutional right to present a defense was violated when the court precluded her from introducing evidence of third party culpability. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In January, 2008, Officer John Blackmore of the New Britain police department (department) received information from a confidential informant that heroin was being sold from an apartment in a multifamily residence located on North Street in New Britain. After receiving this information, the department began surveillance of the apartment.[1] In addition to surveillance, the department also used confidential informants to make three controlled purchases of heroin from the apartment.[2] On the basis of information gathered from these investigative activities, the department suspected that three individuals, including a Hispanic male named "Bebo" and a woman named "Ada," were selling heroin from the apartment.

Blackmore obtained a search and seizure warrant for the apartment, which the police executed on February 5, 2008. In executing the warrant, Blackmore and several other officers entered the multifamily residence

[1] During the surveillance, officers observed many known drug users visiting the apartment and witnessed multiple hand-to-hand exchanges in the parking area.

[2] The three controlled purchases took place on January 10, 18 and 28, 2008. According to the record, all three occurred substantially in the same manner. After being searched for drugs, the confidential informant was given prerecorded buy money and dropped off near the area of the apartment. From a nearby location, officers watched the confidential informant enter the apartment and exit a short time later. The informant then met with the officers at a predetermined location and turned over the purchased substance. On all three occasions, a confidential informant purchased a substance from someone in the apartment that field tested positive for heroin.

and proceeded to the apartment, while Officer Gerald Hicks of the department and two other uniformed officers remained outside. After reaching the apartment, an officer knocked on the front door and advised the occupants of the warrant. The defendant answered the door and allowed the officers admission. Upon entry, the officers gathered the defendant and three other occupants into the living room area.

After the apartment was secured, Hicks proceeded inside. Without issuing a *Miranda* warning,[3] Hicks asked the defendant "if there [were] any drugs or weapons in the apartment." The defendant responded in the affirmative and then led Hicks to her bedroom. Once there, she pointed to a can of hairspray located on her dresser and stated that it contained heroin. After removing the can's false bottom, Hicks discovered 235 packets of heroin. The defendant was placed under arrest. A search of her person incident to arrest revealed that the defendant was in possession of two $20 dollar bills. It later was determined that these $20 dollar bills had been used by confidential informants in two different controlled purchases.

The defendant subsequently was charged with possession of narcotics with intent to sell by a person who is not drug-dependent and possession of narcotics with intent to sell within 1500 feet of a public school. Prior to trial, the defendant filed a motion to suppress the statement that she made to Hicks during the execution of the search and seizure warrant. On October 20, 2009, the first day of the defendant's trial, the court conducted a hearing on the motion to suppress outside the presence of the jury. At the hearing, the defendant, Hicks and Irma Sierra, who was present when the warrant was executed, testified. After considering the testimony

---

[3] See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

and the arguments of the parties, the court denied the defendant's motion to suppress.

After the motion to suppress was denied, the state introduced the statement that the defendant made to Hicks. On October 26, 2009, the jury returned a verdict of guilty on both counts, and the defendant was sentenced on January 6, 2010.[4] This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly denied her motion to suppress the statement that she made to police during the execution of the search and seizure warrant. According to the defendant, she was "in custody" when Hicks asked her if there were any drugs in the apartment. Therefore, she argues that because she was not provided with a *Miranda* warning prior to police questioning, her statement should have been suppressed. We disagree.

The following additional facts are relevant to our resolution of the defendant's claim. At the hearing on the motion to suppress, Hicks provided the following testimony about the circumstances surrounding the defendant's statement. When he entered the four room apartment, a total of seven officers were present in the living room area where the defendant and the other occupants were seated on a couch. At this point, none of the officers had their weapons displayed, and neither the defendant nor the other occupants were handcuffed. Although they were not handcuffed, Hicks admitted that the occupants were being detained and, consequently, were not free to leave the apartment.

---

[4] The defendant was sentenced to five years incarceration on the charge of possession of narcotics with intent to sell by a person who is not drug-dependent and three years incarceration on the charge of possession of narcotics with intent to sell within 1500 feet of a public school, to be served consecutively.

Hicks testified that although the occupants could not leave the apartment, no one asked for permission to do anything else, such as change seats or use the rest room.

According to Hicks, before the officers searched the apartment, he asked the defendant, who was seated on the couch with the other occupants, whether "there [was] anything in the house that we should know about, in regards to guns or drugs."[5] The defendant answered "yes" and informed him that "there's drugs in the bedroom." Thereafter, the defendant led Hicks to her bedroom and pointed out the can of hairspray. Aside from the initial question, Hicks stated that he did not ask the defendant any more questions.

In support of her motion, the defendant called Sierra. Sierra testified that during the execution of the search warrant, the officers denied her requests to use the rest room and to have the defendant sit in the living room area with the other occupants. In addition, she claimed that the officers removed the defendant's pit bull dog from the apartment and in doing so "put [a] gun in the dog's face . . . ." Finally, she testified that she did not feel free to leave the apartment while the officers were executing the search warrant.

The defendant offered the following testimony in support of her motion. When the police entered the apartment, they were carrying rifles and did not inform her that they had a search and seizure warrant. She asked to sit next to her daughters and to use the bathroom, but the officers denied both requests. She admitted that the officers did not place her in handcuffs but testified that she did not feel free to leave the apartment or to ask the officers to leave.

---

[5] According to Hicks, after securing the premises but prior to executing the warrant, it is the general practice for an officer to ask the occupants this question.

After considering the testimony, the court made only limited findings of facts. It found that the defendant was not handcuffed but that she had been confined to a certain area. On the basis of these findings, the court concluded that the evidence did not establish that the defendant was in custody.

"It is well established that the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self incrimination. *Miranda* v. *Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Two threshold conditions must be satisfied in order to invoke the warnings constitutionally required by *Miranda*: (1) the defendant must have been in custody; and (2) the defendant must have been subjected to police interrogation." (Internal quotation marks omitted.) *State* v. *Mullins*, 288 Conn. 345, 361, 952 A.2d 784 (2008). The defendant bears the burden of proving both conditions. See, e.g., *State* v. *Pinder*, 250 Conn. 385, 409, 736 A.2d 857 (1999); *State* v. *Brown*, 118 Conn. App. 418, 433, 984 A.2d 86 (2009), cert. denied, 295 Conn. 901, 988 A.2d 877 (2010).

In denying the defendant's motion to suppress, the trial court's decision was based upon its conclusion that the evidence failed to establish that the defendant was in custody at the time she was subjected to police questioning. When reviewing the trial court's conclusion as to custody, we "conduct a plenary, scrupulous examination of the record in order to make an independent determination on the ultimate issue of custody, but we . . . defer to the trial court's historical findings of fact unless they are clearly erroneous. *State* v. *Pinder*, supra, 250 Conn. 410–12; see also *State* v. *Lapointe*, 237 Conn. 694, 725, 678 A.2d 942, cert. denied, 519 U.S. 994, 117 S. Ct. 484, 136 L. Ed. 2d 378 (1996)." *State* v. *Doyle*, 104 Conn. App. 4, 12, 931 A.2d 393, cert. denied,

284 Conn. 935, 935 A.2d 152 (2007); see also *State* v. *Hasfal*, 106 Conn. App. 199, 205, 941 A.2d 387 (2008).

To determine whether an individual is in custody for purposes of *Miranda*, we must evaluate the circumstances confronting the defendant and ascertain whether there was a restraint on his or her freedom of movement to the degree associated with a formal arrest. See, e.g., *Stansbury* v. *California*, 511 U.S. 318, 324, 114 S. Ct. 1526, 128 L. Ed. 2d 293 (1994); *State* v. *Turner*, 267 Conn. 414, 434, 838 A.2d 947, cert. denied, 543 U.S. 809, 125 S. Ct. 36, 160 L. Ed. 2d 12 (2004). "[T]he United States Supreme Court has adopted an objective, reasonable person test for determining whether a defendant is in custody. . . . Thus, in determining whether *Miranda* rights are required, the only relevant inquiry is whether a reasonable person in the defendant's position would believe that he or she was in police custody of the degree associated with a formal arrest." (Internal quotation marks omitted.) *State* v. *Britton*, 283 Conn. 598, 604, 929 A.2d 312 (2007).

In conducting this inquiry, the defendant urges us to employ the free to leave test. Pursuant to this test, an individual is in custody, and *Miranda* warnings are required, when a reasonable person under the circumstances would have believed that he or she was not free to leave the scene of the interrogation. See, e.g., *In re Kevin K.*, 299 Conn. 107, 127–28, 7 A.3d 898 (2010). Although this test has been cited frequently in the case law, we conclude that it does not apply under the facts of the present case.

In concluding that the free to leave test does not apply, we rely on this court's recent decision in *State* v. *Hasfal*, supra, 106 Conn. App. 199. In *Hasfal*, two police officers questioned the defendant in his motel room without providing him with *Miranda* warnings. Id., 203. At the time, the motel room was serving as the

defendant's residence. Id. In response to police questioning, the defendant provided an incriminating statement. Id. On appeal from the trial court's denial of his motion to suppress, the defendant argued that the police should have provided him with *Miranda* warnings prior to questioning him. Id., 204. This court determined that the dispositive issue was whether the defendant was in custody at the time the police subjected him to questioning. Id.

After noting that our courts previously have utilized the free to leave test when conducting the custody inquiry, this court recognized that "[t]he free to leave test is a good fit for a *Miranda* inquiry when the police interrogate someone at a police station, but it is not necessarily a good fit for interrogations at other locations. Thus, other courts have held that the test is not a useful tool to ascertain the need for *Miranda* warnings when someone is detained pursuant to a routine traffic stop; *Berkemer* v. *McCarty*, 468 U.S. 420, 439–40, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984); is seated in a passenger bus; *Florida* v. *Bostick*, 501 U.S. 429, 436–37, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991); is in prison; *Cervantes* v. *Walker*, 589 F.2d 424, 428 (9th Cir. 1978); or in a hospital bed. *State* v. *Pontbriand*, 178 Vt. 120, 126, 878 A.2d 227 (2005)." *State* v. *Hasfal*, supra, 106 Conn. App. 206–207. Thereafter, this court concluded that the free to leave test is "unsuitable for an inquiry about custody . . . where it is unclear where else the defendant would have gone in the absence of his detention." Id., 207.

Similar to *Hasfal*, the defendant in the present case was at her residence at the time she was subjected to police questioning. Putting aside, for a moment, the issue of whether the defendant *could* leave, it is unclear where the defendant might have gone if she had not been detained. Accordingly, we conclude that the free to leave test is unsuitable for the custody inquiry under

the present facts. Having concluded that this test is unsuitable, "we must . . . go back to the underlying inquiry of whether a reasonable person in the defendant's position would have believed that he or she was in police custody of the degree associated with a formal arrest." Id.; see *State* v. *Britton*, supra, 283 Conn. 604.[6]

Turning to the defendant's claim, on the basis of the limited evidence presented and the limited facts found by the trial court, we cannot conclude that a reasonable person in the defendant's position would have believed that she was in police custody of the degree associated with formal arrest. At the time of the police questioning, the defendant was confined to the living room area, but she was not handcuffed or physically restrained. Although seven officers were present in the living room area, the defendant adduced no evidence that any officer used or threatened the use of force toward her or the other occupants, or that any officer told her that she was under arrest. The questioning occurred soon

---

[6] In reaching this conclusion, we note that the United States Court of Appeals for the Second Circuit recently has determined that the free to leave test is the first prong of a two-pronged test for determining whether an individual was in custody for purpose of *Miranda*. In *United States* v. *Newton*, 369 F.3d 659, 672 (2d Cir.), cert. denied, 543 U.S. 947, 125 S. Ct. 371, 160 L. Ed. 2d 262 (2004), after acknowledging that "a free-to-leave inquiry reveals only whether the person questioned was seized," the court enumerated the following two-pronged test: "[A] court [should] begin any custody analysis by asking whether a reasonable person would have thought he was free to leave the police encounter at issue. If the answer is yes, the *Miranda* inquiry is at an end; the challenged interrogation did not require advice of rights. On the other hand, if a reasonable person would not have thought himself free to leave, additional analysis is required because as *Berkemer* v. *McCarty*, [supra, 468 U.S. 439–40] instructs, not every seizure constitutes custody for purpose of *Miranda*. . . . In such cases, a court must ask whether, in addition to not feeling free to leave, a reasonable person would have understood his freedom of action to have been curtailed to a degree associated with formal arrest. . . . Only if the answer to this second question is yes was the person in custody for practical purposes, and entitled to the full panoply of protections prescribed by *Miranda*." (Citations omitted; internal quotation marks omitted.)

after the apartment was secured, transpired in the familiar surroundings of the defendant's residence, and was limited in its scope and duration.

In reaching our conclusion, we are also guided by the United States Supreme Court's decision in *Michigan v. Summers*, 452 U.S. 692, 101 S. Ct. 2587, 69 L. Ed. 2d 340 (1981). In *Summers*, the issue before the court concerned whether an individual detained in his residence during the execution of a search warrant was subject to an unreasonable seizure in violation of the fourth amendment to the United States constitution. Id., 695. Although the court did not address specifically the custody issue of *Miranda*, it did state: "In sharp contrast to the custodial interrogation in [*Dunaway* v. *New York*, 442 U.S. 200, 99 S. Ct. 2248, 60 L. Ed. 2d 824 (1979)], the detention of this respondent was 'substantially less intrusive' than an arrest." *Michigan* v. *Summers*, supra, 702. Relying on *Summers*, we agree with the position taken by a number of other courts, which have held that a defendant is normally not in custody, and the *Miranda* warnings are not required, when he or she is detained during the execution of a search warrant. See, e.g., *United States* v. *Ritchie*, 35 F.3d 1477, 1485–86 (10th Cir. 1994) (finding of no custody under facts materially indistinguishable from *Summers*); *United States* v. *Burns*, 37 F.3d 276, 281 (7th Cir. 1994) ("a person detained during the execution of a search warrant is not 'in custody' for *Miranda* purposes"), cert. denied, 515 U.S. 1149, 115 S. Ct. 2592, 132 L. Ed. 2d 840 (1995).

In the present case, the trial court did not make any factual findings that would lead us to conclude that the defendant was subject to greater constraints on her freedom of movement than those normally occurring during the execution of a search and seizure warrant. Accordingly, we conclude that the trial court properly determined that the defendant was not in custody at the

time of the police questioning and, therefore, properly denied the defendant's motion to suppress.

## II

The defendant next claims that her constitutional right to present a defense was violated when the court precluded her from introducing evidence of third party culpability. Specifically, the defendant argues that the court should have permitted her to introduce evidence that Dionices Flores pleaded guilty to possession of the heroin discovered in the defendant's bedroom because this evidence was relevant to the issue of whether the defendant was in possession of the heroin. We conclude that the record is inadequate to permit review of this claim.

The following additional facts are relevant to the defendant's second claim. As mentioned previously, a Hispanic male named "Bebo" was one of three individuals the department suspected of selling heroin from the apartment. During the investigation, the police discovered that Bebo's real name was Dionices Flores. While the police were executing the search and seizure warrant on February 5, 2008, and after the defendant had been placed under arrest, Flores arrived at the apartment. He was then placed under arrest.

Prior to trial, the defendant filed a motion, requesting that the court take judicial notice of a criminal case file in which Flores was the defendant, "including the charges, plea and disposition therein." On October 20, 2009, the defendant asked the court to issue a ruling on the motion. The court declined to rule at that time, stating that it would have to consider the testimony presented at trial to determine whether the evidence was relevant. On October 21, 2009, the second day of the defendant's trial, the court conducted a hearing outside the presence of the jury on the defendant's motion. After hearing arguments from counsel, the

court determined that the evidence was not relevant. As a result of the court's ruling, the court did not take judicial notice of the court file, and the defendant was precluded from presenting any information contained therein.

"We have recognized consistently that a defendant has a right to introduce evidence that indicates that someone other than the defendant committed the crime with which the defendant has been charged. . . . The defendant must, however, present evidence that directly connects a third party to the crime . . . . It is not enough to show that another had the motive to commit the crime . . . nor is it enough to raise a bare suspicion that some other person may have committed the crime of which the defendant is accused. . . .

"The admissibility of evidence of third party culpability is governed by the rules relating to relevancy. . . . Relevant evidence is evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence. . . . Accordingly, in explaining the requirement that the proffered evidence establish a direct connection to a third party, rather than raise merely a bare suspicion regarding a third party, we have stated [that] [s]uch evidence is relevant, exculpatory evidence, rather than merely tenuous evidence of third party culpability [introduced by a defendant] in an attempt to divert from himself the evidence of guilt. . . . In other words, evidence that establishes a direct connection between a third party and the charged offense is relevant to the central question before the jury, namely, whether a reasonable doubt exists as to whether the defendant committed the offense. Evidence that would raise only a bare suspicion that a third party, rather than the defendant, committed the charged offense would not be relevant to the jury's determination." (Citation omitted;

internal quotation marks omitted.) *State* v. *Hedge*, 297 Conn. 621, 634–35, 1 A.3d 1051 (2010).

In the present case, the defendant failed to make a proffer to the trial court explaining what information was contained in the court file. In the absence of a factual proffer, we are unable to determine whether this information establishes a direct connection between Flores and the heroin found in the apartment, or whether it would raise only a bare suspicion that Flores, rather than the defendant, possessed the heroin found in the defendant's bedroom. Therefore, we conclude that the record is inadequate to review the defendant's claim.

The judgment is affirmed.

In this opinion the other judges concurred.