## STATE OF CONNECTICUT *v.* RICHARD D. READ
## (AC 32972)

Gruendel, Beach and Robinson, Js.

Argued September 16—officially released November 1, 2011

G. *Douglas Nash*, special public defender, for the appellant (defendant).

*Bruce R. Lockwood*, senior assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Brian Preleski*, senior assistant state's attorney, for the appellee (state).

*Opinion*

PER CURIAM. The defendant, Richard D. Read, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a. His sole claim on appeal is that the court improperly denied his motion to suppress. We affirm the judgment of the trial court.

Following a shooting in the late hours of October 21, 2005, the defendant was arrested and charged with the murder of Brian Raboin. A criminal trial followed, at which the defendant orally moved to suppress certain testimony of Detective Gary Dorman of the Bristol police department pertaining to statements made by the defendant during the April 14, 2006 execution of a search warrant at his home. The court conducted a suppression hearing outside the presence of the jury, at the conclusion of which it found that a reasonable person in the defendant's position would not have believed that he was in police custody at the time the statements in question were made. The jury thereafter found the defendant guilty of murder, and the court sentenced him to a term of fifty years incarceration. This appeal followed.

The defendant claims that the court improperly determined that he was not in custody at the time of his statements to Dorman. Accordingly, he maintains that the failure to provide *Miranda* warnings[1] at that time mandated suppression of his statements. We disagree.

"It is well established that the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self incrimination. . . . [T]he United States Supreme Court has adopted an objective, reasonable person test for determining whether a defendant is in custody. . . . Thus, in determining whether *Miranda* rights are required, the only relevant inquiry is whether a reasonable person in the defendant's position would believe that he or she was in police custody of the degree associated with a formal arrest. . . . In making this claim, [t]he defendant bears the burden of proving that he was in custody for *Miranda* purposes." (Citations omitted; internal quotation marks omitted.) *State* v. *Edwards*, 299 Conn. 419, 426–27, 11 A.3d 116 (2011).

"As a general matter, the standard of review for a motion to suppress is well settled. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [H]owever, when a question of fact is essential to the outcome of a particular legal determination that implicates a defendant's constitutional rights, and the credibility of witnesses is not the primary issue, our customary deference to the trial court's factual findings is tempered by a scrupulous examination of the record to ascertain that the trial court's factual findings are supported by substantial evidence. . . . Where the

[1] See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

legal conclusions of the court are challenged, [our review is plenary, and] we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . .

"The question of whether a defendant is in custody for purposes of a custodial interrogation involves a two step inquiry. The trial court first makes a factual determination of the circumstances surrounding the alleged interrogation and then applies those facts to an objective test as to whether a reasonable person would have felt that he or she was not at liberty to leave. . . . The first inquiry is factual and will not be overturned unless, after a scrupulous examination of the record, we find that it is clearly erroneous. . . . The second question calls for application of the controlling legal standard to the historical facts [which is a question of law]. . . . The ultimate determination of whether a defendant was subjected to a custodial interrogation, therefore, presents a mixed question of law and fact, over which our review is de novo." (Internal quotation marks omitted.) *State* v. *Bridges*, 125 Conn. App. 72, 78–79, 6 A.3d 223 (2010), cert. denied, 300 Conn. 931, 17 A.3d 68 (2011). Applying that standard, we agree with the court that a reasonable person would not have believed that he was in police custody of the degree associated with a formal arrest at the time the statements in question were made.

In its oral ruling, the court expressly credited the suppression hearing testimony of Dorman, as is its exclusive prerogative. See *State* v. *Lawrence*, 282 Conn. 141, 156, 920 A.2d 236 (2007) (noting "fundamental distinction" between function of fact finder to make credibility determinations and to find facts and function of appellate tribunal to review, and not to retry, proceedings of trial court). Dorman testified that he executed a search warrant on 2 Maple Avenue in Plymouth, where

the defendant resided with Edson Cleveland, his uncle and owner of the property. Upon his arrival, Dorman first met with Cleveland, who was outside preparing for a flower sale at the front of the property. Dorman showed him the search warrant, and Cleveland thereafter walked Dorman and a second detective inside, explaining that the defendant was taking a shower upstairs at the time. Dorman initially spoke to the defendant from outside the bathroom door and testified that the defendant "appeared to recognize my voice because we had spoken many times before that."[2] The defendant exited the bathroom, and the detectives explained the purpose of their visit. They showed the defendant the search warrant, which he examined. The detectives then explained to him that he needed to be outside the residence during the search. Once dressed, the detectives escorted the defendant out of the residence to ensure that he left without contaminating the scene. They further informed the defendant and Cleveland that "they were both free to come and go as they pleased."

The execution of the search warrant lasted approximately eight to ten hours. At no point was the defendant handcuffed. Rather, the defendant "walked around the property. He smoked cigarettes, drank coffee." More specifically, the defendant repeatedly walked over to a parking lot and general store located on the property approximately thirty to fifty yards to the right of the residence. The search warrant did not authorize a search of either the general store or the parking lot. In addition, the defendant testified at the suppression hearing that he walked to the flower sale at the front of the property multiple times to converse with relatives and dine on donuts and coffee. Notably, the defendant

---

[2] Dorman testified that he had met with the defendant "six or seven times, and I also spoke to him on the phone several times" in the months prior to the April 14, 2006 execution of a search warrant on his home.

testified that the officers were not by his side throughout the search. As he acknowledged: "If we were there for ten hours, I'd say they were within speaking distance for eight of it. . . . [F]or at least two hours, the officers weren't within twenty feet of [me]." During one of the defendant's visits to the general store that day and after Dorman had informed him that he was free to leave the scene, the defendant made certain statements to Dorman, which form the basis of this appeal. The court also heard testimony from Cleveland, who observed the proceedings on his property on April 14, 2006, and who testified that it appeared to him that the defendant was free to leave the area.

In its oral ruling, the court accepted Dorman's testimony that he informed the defendant at the outset of the search that he was free to come and go as he pleased.[3] See *State* v. *Greenfield*, 228 Conn. 62, 71 n.10, 634 A.2d 879 (1993) (important factor distinguishing consensual encounter from seizure is whether police expressly informed defendant that he was free to leave at outset of interview). Second, the court found that the defendant's movement was not restricted by the police and that "he walked about freely." See, e.g., *State* v. *Britton*, 283 Conn. 598, 612, 929 A.2d 312 (2007) (court deems it relevant that defendant "not handcuffed or subjected to force"); *State* v. *Doyle*, 104 Conn. App. 4, 14, 931 A.2d 393 (court deems it relevant that defendant not physically restrained in any way), cert. denied, 284 Conn. 935, 935 A.2d 152 (2007); contra *United States* v. *Craighead*, 539 F.3d 1073, 1089 (9th Cir. 2008)

---

[3] To be clear, we are not applying the "free to leave test" discussed in *State* v. *Hasfal*, 106 Conn. App. 199, 206–207, 941 A.2d 387 (2008). Rather, we simply are considering the court's factual finding that Dorman informed the defendant that he was free to come and go as he pleased during the execution of the search warrant as one factor in our analysis of whether a reasonable person would not have believed that he was in police custody of the degree associated with a formal arrest at the time the statements in question were made.

("[e]scorted to a storage room in his own home, sitting on a box, and observing an armed guard by the door, [the defendant] reasonably believed that there was simply nowhere for him to go"). The court further credited Cleveland's opinion that the defendant's movement was not restricted by the police. As the sole arbiter of the credibility of witnesses, the court was free to believe that testimony. See *State* v. *Smith*, 99 Conn. App. 116, 136, 912 A.2d 1080, cert. denied, 281 Conn. 917, 917 A.2d 1000 (2007). The court also emphasized that it was "taking into consideration the history" between the defendant and Dorman, opining that "you're more intimidated by strangers who you don't know." Last, the court found that the defendant did in fact leave the area of the search. It stated: "[The defendant] went to an area that was not subject to the search, a general store . . . . He interacted with his relatives, had coffee and a donut. . . . [O]ver the course of eight or ten hours, walking about freely, interacting with your relatives, going to a public flower sale . . . . Strictly speaking, he did leave."

In light of those findings, all of which are supported by the record, we agree that a reasonable person in the defendant's position would not have believed that he was in police custody of the degree associated with a formal arrest at the time of his statements to Dorman. Accordingly, the court properly denied the motion to suppress.

The judgment is affirmed.