******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

STATE OF CONNECTICUT *v.* TERENE CLARK
(AC 41175)

Alvord, Elgo and Moll, Js.

*Syllabus*

Convicted of the crime of assault in the second degree in connection with
the stabbing of the victim during an altercation in their shared apartment,
the defendant appealed to this court. She claimed that the trial court
improperly denied her motion to suppress an oral statement that she
had made to the police during an alleged custodial interrogation in her
apartment, which occurred without the officer having first advised the
defendant of her constitutional rights pursuant to *Miranda* v. *Arizona*
(384 U.S. 436). *Held* that the trial court properly denied the defendant's
motion to suppress her statement to the police and determined that the
defendant was not in police custody at the time she made her statement;
under the totality of the circumstances, a reasonable person in the
defendant's position would not have believed that her freedom of move-
ment was restrained to the degree associated with a formal arrest, as
the interrogation took place in the defendant's own residence, she was
questioned by only one officer, whom she voluntarily escorted around
the apartment while explaining the events surrounding the altercation,
the interview lasted less than one hour, the officer asked the defendant
only two questions, there was no indication that the officer exercised
any control over the defendant, who was not handcuffed or physically
restrained, and the officer did not display his weapon or otherwise
present a show or threat of force before or during the questioning to
compel the defendant to speak, and because the defendant was not in
custody when she gave her statement, she was not entitled to an advise-
ment of her rights under *Miranda*.

Argued April 9—officially released July 9, 2019

*Procedural History*

Information charging the defendant with the crime
of assault in the first degree, brought to the Superior
Court in the judicial district of Fairfield and tried to
the jury before *Pavia, J.*; verdict and judgment of guilty
of the lesser included offense of assault in the second
degree, from which the defendant appealed to this
court. *Affirmed.*

*Glenn Formica*, for the appellant (defendant).

*Michael A. DeJoseph*, senior assistant state's attor-
ney, with whom, on the brief, was *John C. Smriga*,
state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Terene Clark, appeals from the judgment of conviction, rendered following a jury trial, of one count of assault in the second degree in violation of General Statutes § 53a-60 (a) (3). On appeal, the defendant claims that the trial court erred by denying her motion to suppress her statement to the police, which she alleges was obtained in violation of her constitutional rights under *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). We affirm the judgment of the trial court.

The jury reasonably could have found the following facts.[1] In the early morning hours of June 18, 2015, the defendant and the victim were involved in an altercation at their shared apartment. At the time, the defendant and the victim had been in a relationship for approximately ten years. The victim became angry when he discovered that the defendant was in the bedroom talking on the phone to another man. The argument started in the bedroom and continued into the kitchen. While in the kitchen, the defendant grabbed a knife off the counter and, ultimately, stabbed the victim twice, once in the upper back and once in the leg. The victim fell to the floor and was unable to stand up. A neighbor drove the victim to the hospital while the defendant remained at the apartment.

At 2:19 a.m., Luis Moura, an officer with the Bridgeport Police Department, was dispatched to a multifamily home on Grand Street to respond to a report of a domestic dispute. Upon arrival, Officer Moura spoke to the second floor tenant, who had called the police. She reported that the dispute happened downstairs.

Officer Moura thereafter knocked on the door of the first floor apartment, and the defendant answered. Officer Moura asked her what had happened, and she responded that "he went to the hospital." Officer Moura did not know about whom the defendant was talking and again asked her what had happened. The defendant led Officer Moura to the bedroom, where she explained that she had been in that room on the phone with a male friend whom the victim did not like. The defendant stated that the victim then took her phone, knocked items off the dresser and onto the floor, and struck her twice.

After the defendant explained to Officer Moura what had happened in the bedroom, she left the bedroom and brought Officer Moura through the living room and into the kitchen. There, she explained that she feared for her life, so she had taken a knife off the counter and warned the victim to stay back. Finally, the defendant explained that the victim was injured when he walked away from her and slipped on water on the kitchen floor, falling backward onto the knife.

Officer Moura then received a phone call from

Thomas Harper, an officer with the Bridgeport Police Department who had gone to the hospital to check on the victim's condition. Officer Harper told Officer Moura that the victim had two stab wounds, one in the leg and one in the upper back, which had left the victim a paraplegic. Upon learning that the victim's injuries were inconsistent with the defendant's version of events,[2] Officer Moura placed the defendant under arrest.

The defendant subsequently was charged with assault in the first degree in violation of General Statutes § 53a-59 (a) (1). Prior to trial, the defendant filed a motion to suppress all statements that she had made to the police, including her statement to Officer Moura explaining what had happened to cause the victim's injuries.[3] At a pretrial suppression hearing, the trial court denied the defendant's motion with respect to her statement as to how the victim's injuries occurred on the ground that the defendant was not in custody at the time she made this statement.

After a jury trial, the defendant was convicted of the lesser included offense of assault in the second degree in violation of § 53a-60 (a) (3). The court rendered judgment in accordance with the jury's verdict and imposed a total effective sentence of seven years incarceration, execution suspended after one year, followed by five years of probation. This appeal followed.

On appeal, the defendant claims that her statement should have been suppressed because she was not advised of her rights under *Miranda* before she made it. "Under our well established standard of review in connection with a motion to suppress, we will not disturb a trial court's finding of fact unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [When] the legal conclusions of the court are challenged, [our review is plenary, and] we must determine whether they are legally and logically correct and whether they find support in the facts set out in the court's memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Arias*, 322 Conn. 170, 176–77, 140 A.3d 200 (2016).

"[P]olice officers are not required to administer *Miranda* warnings to everyone whom they question . . . rather, they must provide such warnings only to persons who are subject to custodial interrogation." (Internal quotation marks omitted.) *State* v. *Castillo*, 329 Conn. 311, 323, 186 A.3d 672 (2018). "As used in . . . *Miranda* [and its progeny], custody is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion. . . . In determining whether a person is in custody in this sense . . . the United States Supreme Court has adopted an objective, reasonable person test . . . the initial step [of which] is to ascertain whether, in light of the objective circumstances of the interrogation . . . a reason-

able person [would] have felt [that] he or she was not at liberty to terminate the interrogation and [to] leave. . . . Determining whether an individual's freedom of movement [has been] curtailed, however, is simply the first step in the analysis, not the last. Not all restraints on freedom of movement amount to custody for purposes of *Miranda*. [Accordingly, the United States Supreme Court has] decline[d] to accord talismanic power to the freedom-of-movement inquiry . . . and [has] instead asked the additional question [of] whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*. . . .

"Of course, the clearest example of custody for purposes of *Miranda* occurs when a suspect has been formally arrested. As *Miranda* makes clear, however, custodial interrogation includes questioning initiated by law enforcement officers after a suspect has been arrested or otherwise deprived of his freedom of action in any significant way. . . . Thus, not all restrictions on a suspect's freedom of action rise to the level of custody for *Miranda* purposes; in other words, the freedom-of-movement test identifies only a necessary and not a sufficient condition for *Miranda* custody. . . . Rather, the ultimate inquiry is whether a reasonable person in the defendant's position would believe that there was a restraint on [his] freedom of movement of the degree associated with a formal arrest. . . . Any lesser restriction on a person's freedom of action is not significant enough to implicate the core fifth amendment concerns that *Miranda* sought to address." (Citations omitted; emphasis omitted; footnotes omitted; internal quotation marks omitted.) *State* v. *Mangual*, 311 Conn. 182, 193–95, 85 A.3d 627 (2014).

"With respect to the issue of whether a person in the suspect's position reasonably would have believed that [he] was in police custody to the degree associated with a formal arrest, no definitive list of factors governs [that] determination, which must be based on the circumstances of each case . . . . Because, however, the [court in] *Miranda* . . . expressed concern with protecting defendants against interrogations that take place in a police-dominated atmosphere containing [inherent] pressures [that, by their very nature, tend] to undermine the individual's [ability to make a free and voluntary decision as to whether to speak or remain silent] . . . circumstances relating to those kinds of concerns are highly relevant on the custody issue. . . . In other words, in order to determine how a suspect [reasonably] would have gauge[d] his freedom of movement, courts must examine all of the circumstances surrounding the interrogation." (Internal quotation marks omitted.) *State* v. *Castillo*, supra, 329 Conn. 324–25.

"In [*State* v. *Mangual*, supra, 311 Conn. 196–97], we

set forth the following nonexclusive list of factors to be considered in determining whether a suspect was in custody for purposes of *Miranda*: (1) the nature, extent and duration of the questioning; (2) whether the suspect was handcuffed or otherwise physically restrained; (3) whether officers explained that the suspect was free to leave or not under arrest; (4) who initiated the encounter; (5) the location of the interview; (6) the length of the detention; (7) the number of officers in the immediate vicinity of the questioning; (8) whether the officers were armed; (9) whether the officers displayed their weapons or used force of any other kind before or during questioning; and (10) the degree to which the suspect was isolated from friends, family and the public." (Internal quotation marks omitted.) *State* v. *Arias*, supra, 322 Conn. 177.

After applying these factors to the present case, we conclude that the trial court properly determined that the defendant was not in custody when she made her statement. The record demonstrates that Officer Moura questioned the defendant at her apartment. In *Mangual*, our Supreme Court recognized that "an encounter with police is generally less likely to be custodial when it occurs in a suspect's home." *State* v. *Mangual*, supra, 311 Conn. 206; see also *Miranda* v. *Arizona*, supra, 384 U.S. 449–50 ("[the suspect] is more keenly aware of his rights and more reluctant to tell of his indiscretions or criminal behavior within the walls of his home" [internal quotation marks omitted]).

Moreover, although Officer Moura initiated contact with the defendant, the defendant voluntarily showed him around her apartment.[4] The encounter lasted less than one hour and Officer Moura asked the defendant only two questions. Although Officer Moura did not explain to the defendant that she was free to leave and was not under arrest, nothing in the record suggests that she was under any compulsion to speak to the police at that point.[5] Rather, Officer Moura testified that, during this time, the defendant was free to walk out of the apartment and leave.[6] The defendant was not handcuffed or physically restrained. In fact, she moved freely throughout her apartment as she made her statement to Officer Moura. These facts do not suggest any restriction on the defendant's freedom of movement, much less to the degree associated with formal arrest.

Finally, Officer Moura was the only police officer present during the encounter with the defendant. Although Officer Moura was armed, he did not display his weapon to the defendant or use any force before or during the questioning. To the contrary, the record shows that Officer Moura exercised little, if any, control over the defendant. Cf. *State* v. *Mangual*, supra, 311 Conn. 201–202 (police exercised complete control over defendant and surroundings before, during, and after questioning).

After considering all of the circumstances surrounding the questioning of the defendant, we cannot conclude that a reasonable person in the defendant's position would have believed that her freedom of movement was restrained to the degree associated with a formal arrest. Because the defendant was not in custody when she gave her statement, we further conclude that she was not entitled to an advisement of her rights under *Miranda*.[7] See *State* v. *Arias*, supra, 322 Conn. 179. Accordingly, the trial court properly denied her motion to suppress.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] We note that, although not necessary to our disposition of the defendant's claim on appeal, the defendant has not provided this court with the full trial transcript. Our recitation of the facts, therefore, is limited to the record before us.

[2] At the hearing on the motion to suppress, Officer Moura testified that he found the medical information that Officer Harper had given him to be inconsistent with the version of events given to him by the defendant to the extent that "[the defendant] stated that [the victim] turned and slipped on the wet floor when he was cut once. However, with two stab wounds and [the victim becoming] permanently paralyzed, it's more [of] a deliberate action."

[3] Along with her statement as to how the victim's injuries occurred, the defendant moved to suppress two additional statements that she made to the police. The court's rulings on these two additional statements are not at issue in this appeal.

First, after Officer Moura's conversation with Officer Harper, he told the defendant that the information he had received was inconsistent with her explanation of what had happened. The defendant responded: "I was just defending myself." The court granted the defendant's motion with respect to this statement on the basis of Officer Moura's testimony that he decided to arrest the defendant after speaking to Officer Harper.

Second, after she was arrested, the defendant gave a statement to a detective at the Bridgeport Police Department. The court denied the defendant's motion with respect to this statement on the ground that she had, at that point, been advised of her *Miranda* rights and had knowingly and voluntarily waived those rights. The state ultimately did not introduce this statement into evidence at trial.

[4] The record is unclear as to how Officer Moura initially entered the defendant's apartment. We therefore find unpersuasive the defendant's arguments that "there was never a request to enter [the apartment] by Officer Moura or an invitation by [the defendant]" and that "[t]his case is distinguishable from cases in which police actually were invited into a residence."

[5] The defendant argues that the trial court used the seriousness of the victim's injuries to determine that she should have been advised of her *Miranda* rights only after Officer Moura spoke to Officer Harper. See footnote 3 of this opinion. The defendant argues that, in doing so, the court made "a critical error of law in this case." The defendant further argues that Officer Moura should have advised her of her *Miranda* rights upon his arrival at her door because "[he] knew at the time he arrived at [the defendant's] door that she was the prime suspect in a domestic violence incident that had resulted in someone being so significantly injured that they needed treatment at the hospital." We are not persuaded by either of these arguments.

First, there is nothing in the record to support the defendant's assertion that Officer Moura knew that someone had been transported to the hospital before the defendant told him, or that he knew of the seriousness of the victim's injuries prior to Officer Harper's call. Moreover, the trial court's determination that the defendant should have been advised of her *Miranda* rights after Officer Moura spoke to Officer Harper was not based on the seriousness of the victim's injuries. Rather, the trial court based its determination that the defendant should have been advised of her *Miranda* rights after Officer Moura spoke to Officer Harper on Officer Moura's testimony that the defendant was no longer free to leave after he learned, from Officer

Harper, that the victim had sustained two stab wounds, injuries that were inconsistent with the defendant's explanation of what had happened during the altercation. See footnote 3 of this opinion.

[6] The defendant argues that she was not free to leave, in part because the encounter between her and Officer Moura took place at her apartment. With respect to this argument, she contends that the court should not apply the "free to leave" test, pursuant to which "*Miranda* warnings are required only if, under the circumstances, a reasonable person would believe that he or she was not free to leave the scene of the interrogation." *State* v. *Hasfal*, 106 Conn. App. 199, 206, 941 A.2d 387 (2008); see *State* v. *Mangual*, supra, 311 Conn. 195 n.12 (noting that it has not always clearly distinguished ultimate inquiry from threshold determination of whether reasonable person in suspect's position would feel free to terminate questioning and leave).

Our Supreme Court's decision in *State* v. *Castillo*, supra, 329 Conn. 311, which also involved a police encounter at the defendant's residence, provides us with guidance on this issue. The court noted: "[N]ot all restrictions on a suspect's freedom of action rise to the level of custody for *Miranda* purposes; in other words, the freedom-of-movement test identifies only a necessary and not a sufficient condition for *Miranda* custody." (Internal quotation marks omitted.) *State* v. *Castillo*, supra, 324; see also *State* v. *Mangual*, supra, 311 Conn. 194–95 n.12. Accordingly, as our Supreme Court did in *Castillo*, we use the nonexclusive list of factors set forth in *Mangual* to reach our conclusion on the ultimate issue of whether a reasonable person in the defendant's position would believe that there was a restraint on her freedom of movement to the degree associated with a formal arrest. See *State* v. *Castillo*, supra, 322.

[7] Because we conclude that the defendant was not in custody, we need not address her claim that she was subjected to interrogation. See *State* v. *Smith*, 321 Conn. 278, 288, 138 A.3d 223 (2016) ("[t]wo threshold conditions must be satisfied in order to invoke the warnings constitutionally required by *Miranda*: (1) the defendant must have been in custody; and (2) the defendant must have been subjected to police interrogation" [internal quotation marks omitted]). Moreover, because we conclude that there was no error, we need not conduct a harmless error analysis.

———————————————————